J/H REAL ESTATE INC., individually
and on behalf of all others
similarly situated

v.

Leonard ABRAMSON, et al.

Joseph TULINO, individually and
on behalf of all others
similarly situated

v.

Leonard ABRAMSON, et al.

Civil Action Nos. 95–4176, 95–7180.

United States District Court,
E.D. Pennsylvania.

Dec. 30, 1996.

Opinion Granting Reconsideration
in Part, Jan. 24, 1997.

Stephen A. Whinston, Berger & Montague, P.C., Philadelphia, PA, Mark J. Dorval, Eugene A. Spector, Jeffrey L. Kodroff, Spector & Roseman, P.C., Philadelphia, PA, Jared Specthrie, Lee S. Shalov, Milberg Weiss Bershad Hynes & Lerach L.L.P., New York City, Arthur Stock, Berger and Montague, P.C., Philadelphia, PA, Jane H. Lovitch, Philadelphia, PA, Janine L. Pollack, Milberg, Weiss, Bershad, Hynes & Lerach, L.L.P., New York City, for J/H Real Estate Inc.

Joseph C. Kohn, Kohn, Savett, Klein & Graf, P.C., Philadelphia, PA, Michael J. Chepiga, James J. Hagan, Simpson, Thacher & Bartlett, New York City, Harold E. Kohn, Steven M. Steingard, Kohn, Swift & Graf, P.C., Philadelphia, PA, James G. Kreissman, Paul C. Curnin, David E. Massengill, Simpson, Thacher & Bartlett, New York City, for Leonard Abramson in Civil Action No. 95–4176.

Joseph C. Kohn, Kohn, Savett, Klein & Graf, P.C., Philadelphia, PA, Michael J. Chepiga, James J. Hagan, Simpson, Thacher & Bartlett, New York City, Harold E. Kohn, Steven M. Steingard, Kohn, Swift & Graf, P.C., Philadelphia, PA, James G. Kreissman, Paul C. Curnin, David E. Massengill, Simpson Thacher & Bartlett, New York City, for Costas C. Nicolaides, U.S. Healthcare, Inc.

Stephen A. Whinston, Berger & Montague, P.C., Philadelphia, PA, Mark J. Dorval, Jef-

frey L. Kodroff, Spector & Roseman, P.C., Philadelphia, PA, Jared Specthrie, Lee S. Shalov, Milberg Weiss Bershad Hynes & Lerach L.L.P., New York City, Arthur Stock, Berger and Montague, P.C., Philadelphia, PA, Jane H. Lovitch, Philadelphia, PA, Janine L. Pollack, Milberg, Weiss, Bershad, Hynes & Lerach, L.L.P., New York City, for Joseph Tulino.

Michael J. Chepiga, Simpson, Thacher & Bartlett, New York City, Harold E. Kohn, Steven M. Steingard, Kohn, Swift & Graf, P.C., Philadelphia, PA, Paul C. Curnin, David E. Massengill, New York City, for Leonard Abramson, Costas C. Nicolaides, and U.S. Healthcare, Inc. in Civil Action No. 95–7180.

## MEMORANDUM

BARTLE, District Judge.

These are two related securities class actions. Plaintiffs, stockholders of U.S. Healthcare, Inc., claimed that defendants engaged in a scheme to defraud by withholding adverse information about the company, thereby maintaining the stock at an inflated price during the class period. With discovery completed and the trial date fast approaching, counsel advised the court that the parties had reached a proposed settlement. After notice and a hearing as required under Rule 23(e) of the Federal Rules of Civil Procedure, the court approved the settlement in the amount of $22,000,000. In doing so, the court took into account the various factors set forth in *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir.1975). *See also In re General Motors Corp. Pick–Up Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768 (3d Cir.), *cert. denied*, —— U.S. ——, 116 S.Ct. 88, 133 L.Ed.2d 45 (1995). We must now decide the issue of counsel fees and costs.

█ Plaintiffs' counsel are entitled to a fee, as well as costs, to be paid from the common fund they have created for the shareholder class members. *General Motors*, 55 F.3d at 820 n. 39. The plaintiffs' counsel request a fee of $7,040,000, which represents 32% of the $22,000,000 obtained. In addition, they seek costs in the amount of $1,033,529.

There are two different means which have been approved for calculating counsel fees in common fund cases. One is the lodestar method and the other the percentage of recovery method. Under the former, a court first determines how many hours were reasonably spent on the case by each attorney and in what manner. *Lindy Bros. Builders, Inc. v. American Radiator & Standard Sanitary Corp.*, 487 F.2d 161, 167 (3d Cir.1973). The court then values these services, applying a reasonable hourly rate and weighing each attorney's legal reputation and status. *Id.* The number of hours are multiplied by the value, producing the lodestar. *See General Motors*, 55 F.3d at 819 n. 37. This amount should not be augmented based on the contingent nature of the success of the litigation or any similar factor. *City of Burlington v. Dague*, 505 U.S. 557, 112 S.Ct. 2638, 120 L.Ed.2d 449 (1992); *General Motors*, 55 F.3d at 822.

The percentage of recovery method, now favored by the Court of Appeals for the Third Circuit in common fund cases, employs a different approach. *See General Motors*, 55 F.3d at 821. The court awards to counsel a percentage of the total settlement fund, with the objective of rewarding counsel for success and penalizing it for failure. *Id.* at 821–22. Unlike the lodestar method, there is no advantage to counsel in prolonging the case to enhance the fee. Here we will utilize the percentage of recovery method as the more appropriate one.

The Court of Appeals has instructed the district courts to play an active role in determining the amount of counsel fees to be awarded in this type of action. The court must protect the rights of the class members whose counsel, when seeking a fee, stand in a position adverse to their clients. A class member, unless he or she hires separate counsel (at a cost that will probably be significantly greater than his or her individual recovery), is clearly at a disadvantage in challenging any fee petition. Moreover, once a settlement has been reached, defendants' counsel has no real incentive to object, and predictably did not do so here. A defendant at that point has no interest in how the pie is divided. The fee application therefore is subject to "thorough judicial review" in order to assure that no overreaching occurs and that counsel and class members alike are

treated fairly. *General Motors*, 55 F.3d at 819.

As noted above, we approved a settlement of $22,000,000 in a separate hearing. We found it to be fair, adequate, and reasonable. We recognized then and recognize now that plaintiffs' counsel faced formidable adversaries and would have had to confront a number of serious evidentiary hurdles if this case had gone to trial. A victory for the plaintiffs at the end of the day was by no means assured. The result plaintiffs' counsel achieved was commendable. Nonetheless, we must balance any fee award against the interests of the class members, who after all, are the beneficiaries of this fund. The issue is one of fair and reasonable compensation to counsel, who took serious risks and created a sizable fund, while preventing a windfall detrimental to the class members.

We have decided that an award of 25% of the fund is proper. This means a fee of $5,500,000. The Court of Appeals has noted that class action fee awards have ranged from 19% to 45%. *See General Motors*, 55 F.3d at 822. While the percentage applied here is at the lower end of the spectrum, we are influenced by the size of the settlement, which, at $22,000,000, is one of the largest in recent memory in this district. It is appropriate to use a sliding scale when the settlement climbs to this magnitude. *See Court Awarded Attorney Fees, Report of the Third Circuit Task Force* (October 8, 1985), *reprinted in* 108 F.R.D 237, 256 (1985). Although any fee award is necessarily fact specific, we note that our colleague, Judge Raymond J. Broderick, awarded a similar 25% fee in a securities case which also settled for $22,000,000. *See In re SmithKline Beckman Sec. Litig.*, 751 F.Supp. 525, 526, 534 (E.D.Pa.1990). We believe $5,500,000 adequately rewards experienced counsel who faced significant obstacles to obtain an excellent result, while giving the shareholder beneficiaries their just due.

The Court of Appeals has suggested that even when we use the percentage of recovery method to determine counsel fees, we should check the result against the lodestar method "to assure that the precise percentage awarded does not create an unreasonable hourly fee." *General Motors Corp.*, 55 F.3d at 822. Our fee award is also appropriate in light of the lodestar computation.

Using that method, the parties calculated their total fees at $2,085,260.65. In their fee petition, however, counsel provided only a modicum of supporting information. They simply disclosed the total fee for each of the three law firms involved and the total number of hours (8,772) that the firms worked on the case. No further breakdown or description was provided. The rendition of the costs was similarly inadequate. Since this court must protect the interests of the class members, we requested counsel to furnish us with their contemporaneous time sheets with explanations of work done, the hourly rate for each lawyer working on the cases, and a detailed categorization of their costs. Counsel promptly made supplemental filings.[1]

We have now reviewed these submissions and find that the hourly rates, staffing, and the work performed were fair and reasonable under the circumstances. We applaud the three firms for dividing the labor so as to avoid needless duplication. The $5,500,000 award is over 2½ times the lodestar and amounts to a generous but fair premium in terms of dollars. To have granted counsel the requested $7,040,000 fee would have created an "unreasonable hourly" fee. *General Motors*, 55 F.3d at 822.

We now turn to the issue of costs, a figure calculated by counsel to be $1,033,529. Not surprisingly, the bulk of the costs were related to expert witnesses. While counsel have now presented a comprehensive breakdown of their fees, they have not, despite the court's request, delineated their costs as fully. Enough documentation has been provided, however, for this court to determine that the professed expenses are slightly excessive. For example, the Milberg, Weiss firm claims to have spent $13,271.36 on hotels, meals,

---

1. It should be noted that the court held an early status conference in both cases and consolidated them for purposes of pretrial proceedings. A discovery deadline was set. The parties were limited in the number of depositions they could take without further order of court. The cases were placed in this court's November, 1996 trial pool. The parties adhered to this schedule and moved the cases expeditiously.

and transportation, even though counsel only had to travel between New York and Philadelphia, the defendants were located in this region, and many of the experts were locally-based. This sum is unreasonable. The Milberg, Weiss firm also seeks $2,148.02 in secretarial overtime. We reject this item. The class members should not suffer because counsel elected to have some clerical work completed after normal business hours. Counsel also expended $107,808.26 on photocopying and reproduction. They do not identify how many pages were copied or a per page charge. This sum appears to be unduly inflated. Finally, no detail is provided concerning the hours and rates charged by the experts, the largest cost item. In the absence of further support, the amount of $776,953.07 which is claimed seems high. We consider an award of $900,000 in costs to plaintiffs' counsel to be fair and reasonable.

■ Finally, plaintiffs' counsel request that the court award $1,000 to each of the class representatives, J/H Real Estate, Inc. and Joseph Tulino. This type of special award is often bestowed in securities class action cases to recognize the plaintiff for serving as a private attorney general and for conferring a benefit on the class. *See In re SmithKline*, 751 F.Supp. at 535. In light of the very substantial settlement fund the class representatives helped to create in this case, we believe that an award of $1,000 to each named plaintiff is appropriate.

### MEMORANDUM ON RECONSIDERATION

Plaintiffs have filed a motion for reconsideration of this court's Memorandum decision awarding plaintiffs' counsel $5,500,000 in legal fees and $900,000 in costs in connection with a $22,000,000 securities class action settlement. *J/H Real Estate Inc. v. Abramson*, 1996 WL 750053 (E.D.Pa. December 30, 1996). Plaintiffs reiterate their initial request for $7,040,000 in fees and $1,031,259.24 in costs.[1]

A court may reconsider a prior decision "to correct manifest errors of law or fact or to [evaluate] any newly discovered evidence."

*Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir.1985), *cert. denied*, 476 U.S. 1171, 106 S.Ct. 2895, 90 L.Ed.2d 982 (1986). Plaintiffs argue that erroneous factual assumptions prompted the court's reduction of costs and that the court made an error of law in determining counsel fees. The court will address these contentions in turn.

#### I. Costs

In their original petition for an award of attorneys' fees and reimbursement of expenses, the plaintiffs did not provide sufficient itemization. At the class action settlement hearing held on December 23, 1996, the court explained that it would need more detailed documentation before it could determine the propriety of the claimed costs and counsel fees. Close scrutiny is required to "protect the rights of the class members whose counsel, when seeking a fee, stand in a position adverse to their clients." *J/H Real Estate*, 1996 WL 750053 at *2. Plaintiffs subsequently supplied the court with additional information, but there were still significant gaps insofar as the costs were concerned. On December 30, 1996, handicapped by what had been presented, the court awarded plaintiffs' counsel $900,000 in costs, rather than the over $1,000,000 sought.

■ Dissatisfied with the court's decision, the plaintiffs, now taking their third bite at the apple, have finally substantiated their claim with particularity—substantiation which should have been presented in advance of the December 23 hearing. Clearly this additional information did not suddenly surface between our decision of December 30, 1996 and the filing of the reconsideration motion on January 15, 1997. As a general rule, "[w]here evidence is not newly discovered, a party may not submit that evidence in support of a motion for reconsideration." *Harsco*, 779 F.2d at 909. A concomitant principle, however, holds that "in ruling on a motion to reconsider, the court should keep an open mind, and should not hesitate to grant the motion if necessary to prevent manifest injustice or clear error." *Karr v. Castle*, 768 F.Supp. 1087, 1093 (D.Del.1991),

---

**1.** The requested cost amount is $2,269.76 less than that sought in the original petition. Plaintiffs explain that the difference reflects clerical error.

*aff'd sub nom., U.S. v. Carper,* 22 F.3d 303 (3d Cir.1994), *cert. denied,* — U.S. —, 115 S.Ct. 739, 130 L.Ed.2d 641 (1995). While counsel has been dilatory in not providing this evidence at an earlier date, in the interest of justice, we will reconsider the cost figures in light of the supplemental disclosures. Our decision to do so should not be construed as license for counsel to proceed in the same fashion in the future.

Several of plaintiffs' cost items appeared dubious on initial review. Expert fees, calculated at $776,953.07, were far and away the largest expense, yet the hours and rates charged by the particular experts remained a mystery. We noted that "in the absence of further support" the amount claimed seemed high. *J/H Real Estate,* 1996 WL 750053 at *3. Plaintiffs' reconsideration motion provides the necessary support by identifying each expert, describing the nature of the expert's services, noting his or her hourly rate, and totalling the hours which that expert expended on the case. Furnished with this information, it is now apparent to the court that $776,953.07 accurately and reasonably represents the plaintiffs' expert costs.

We were also troubled by the $13,271.36 which the Milberg, Weiss firm claimed to have spent on hotels, meals, and transportation. Considering that counsel only had to travel between New York and Philadelphia, that most of the defendants lived in this region, and that several of the experts were locally-based, this sum appeared unreasonable. *Id.* Plaintiffs now offer receipts, vouchers, and tickets substantiating this claim. In reviewing these, it appears that the accommodations, for the most part, were not extravagant. Taxicabs were the transportation rule, limousines the rare exception. Moreover, as we now know that experts from Houston, Texas spent some 1,890.25 hours working on this case, the significant transportation and lodging costs are more palatable. In all, it seems that Milberg, Weiss reasonably limited its hotel, meal, and transportation costs, and that $13,271.36 accurately reflects the total.

Milberg, Weiss also incurred $2,148.02 in secretarial overtime. We declined to compensate plaintiffs for that expenditure, noting that "[t]he class members should not suffer because counsel elected to have some clerical work completed after normal business hours." *Id.* Nothing in the plaintiffs' motion for reconsideration convinces us that our determination was in error. Secretarial overtime will be excluded from any cost recovery.

Finally, plaintiffs' attorneys spent a seemingly inflated $107,808.26 on photocopying and reproduction. Unaware of the number of pages copied or a per copy cost, the court could not give credence to that figure. *Id.* Plaintiffs now account for that sum, providing invoices and receipts which describe the number of pages copied, the price per page copied, and total reproduction amounts. Plaintiffs also have informed the court that, upon recalculation, their complete photocopying and reproduction cost is $110,198.12, not the $107,808.26 previously represented. Upon review of the materials submitted, we are satisfied that $110,198.12 is the proper aggregate.

## II. Fees

Plaintiffs also seek reconsideration of the award of $5,500,000 in attorneys' fees, a figure representing 25% of the settlement. As noted above, they request $7,040,000 or 32% of the fund. They primarily rely upon a recent opinion in this District where the court awarded approximately 30% of the settlement fund to plaintiffs' counsel in an antitrust case. *In re Residential Doors Antitrust Litig.,* 1996 WL 751550 (E.D.Pa. December 31, 1996). Every fee award, however, is necessarily fact specific. *See J/H Real Estate,* 1996 WL 750053 at *2. The decision in *Residential Doors* reflects different facts. For the reasons stated in our December 30, 1996 Memorandum, we reaffirm our decision to award plaintiffs' counsel $5,500,000 in fees.

## ORDER

AND NOW, this 24th day of January, 1997, for the reasons set forth in the accompanying Memorandum, it is hereby ORDERED that plaintiffs' motion for reconsideration of the court's Memorandum decision

**68**

regarding fees and expenses is GRANTED in part and DENIED in part as follows:

(1) This Court's Order of December 30, 1996 is VACATED to the extent it awarded costs in the amount of $900,000. Plaintiffs' counsel are hereby jointly awarded costs in the amount of $1,029,111.22 out of the Settlement Fund, plus accumulated interest on that sum, to be divided as they may agree; and

(2) The plaintiffs' motion for reconsideration is otherwise DENIED.