**Dianne D. POZZI, Individually and on Behalf of all those similarly situated, Plaintiffs,**

v.

**David W. SMITH, David H. Young, Anthony R. Drury, and Quad Systems Corporation, Defendants.**

**Civil Action No. 95–1454.**

United States District Court, E.D. Pennsylvania.

Jan. 24, 1997.

---

Stuart H. Savett, Barbara A. Podell, Savett, Frutkin, Podell & Ryan, P.C., Philadelphia, PA, Dennis J. Johnson, The Law Offices of Dennis J. Johnson, South Burlington, VT, for plaintiffs.

R. Nicholas Gimbel, Hoyle, Morris & Kerr, Philadelphia, PA, for defendants.

### MEMORANDUM

EDUARDO C. ROBRENO, District Judge.

This is a securities class action. Plaintiff Diane D. Pozzi, individually and on behalf of all those similarly situated (hereinafter referred to collectively as "Plaintiffs") has moved the Court for final certification of the class, a final judgment and order under Rule 54(b) of the Federal Rules of Civil Proce-

dure, final approval of a settlement for $2,450,000 in cash in addition to interest on the settlement fund, $796,450 in attorneys' fees representing 32.5% of the common fund, $49,296.26 in out-of-pocket expenses, and $7,500 in a class representative fee. For the reasons that follow, the Court will grant final certification, will deny entry of a final judgment under Rule 54(b), will approve the settlement, will award Plaintiffs' counsel attorneys' fees in the amount of $612,500 representing 25% of the common fund and $40,516.73 in out-of-pocket expenses, and will award the class representative $1600 as reimbursement for the reasonable value of the time she spent on matters relating to this litigation.

## I. BACKGROUND

This securities litigation involves a consolidated class action brought in federal district court in the Eastern District of Pennsylvania. The complaint was filed on March 10, 1995 by Diane D. Pozzi, on her own behalf and that of all other persons who purchased common shares of Defendant Quad Systems Corporation ("Quad"), a computer software firm, between December 23, 1994 and March 7, 1995 ("the class period"). Named as defendants were Quad and several individuals who had served as officers or directors of Quad during the class period (Quad and the individual defendants are hereinafter referred to as "Defendants").

The complaint alleges violations of Sections 10(b) and 20(a) of the Securities and Exchange Act of 1934, the rules and regulations of the Securities and Exchange Commission ("SEC") promulgated thereunder, and the common law of negligent misrepresentation. Specifically, Plaintiffs allege that, during the class period, Defendants misrepresented and failed to disclose in publicly disseminated materials and public statements material facts concerning its efforts to resolve certain software problems with their QSP–2 product, demand for their products, and their future business prospects. Plaintiffs claim that, as a result of the misrepresentations and omissions of material facts, the class members were induced to purchase Quad stock at artificially inflated prices and therefore suffered substantial financial losses resulting from purchases of Quad stock during the class period.

The proposed settlement provides for creation of a fund of $2,450,000 in cash in addition to interest which has accrued on the settlement fund since June 1995. After deductions of the expenses of notice and settlement administration, attorneys' fees and costs, and the class representative fee, the net settlement fund will be distributed to those class members submitting valid claims.

In accordance with the Plan of Distribution described in the settlement mailed to the class on October 18, 1996, the settlement fund will be allocated pro-rata among class members. The amount each class member will receive will be determined under a complex formula which factors the amount of the damages suffered by class members at different times during the class period ("the Recognized Loss").

On August 28, 1996, the Court held a hearing on Plaintiffs' request for conditional certification of the class and approval of the notice of settlement, award of attorneys' fees and reimbursement for litigation expenses, and award of a class representative fee. (doc. 48) After entertaining arguments from counsel on the issues, the Court conditionally certified the class, and granted preliminary approval to the settlement. On October 18, 1996, approximately 2,000 notices of the terms of the settlement were mailed to members of the class. Moreover, pursuant to the Court's Order, a summary notice was published in the national edition of the *Wall Street Journal.* No objections were filed by class members and none opted out of the class. On December 13, 1996, the Court conducted a final hearing on the Plaintiffs' request for final certification of the class, entry of a final judgment and order under Rule 54(b) of the Federal Rules of Civil Procedure, final approval of the settlement, award of attorneys' fees and reimbursement for litigation expenses, and award of a class representative fee. (doc. 58) No objectors appeared at the hearing.

Since the date of the final hearing, at the Court's request, counsel for Plaintiffs have furnished the Court further documentation in

support of the amount claimed in costs and expenses, and the amount of time that the class representative has spent on matters relating to this litigation. The Court now sets forth its conclusions.

## II. DISCUSSION

### 1. Final Certification of the Class

The class was conditionally certified for the purpose of concluding the settlement between the parties. The Third Circuit has declared that class actions created for the purpose of settlement are recognized under the general scheme of Federal Rule of Civil Procedure 23, provided that the class meets the certification requirements under the Rule. *See In re General Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.,* 55 F.3d 768, 792–97 (3d Cir.), *cert. denied,* —— U.S. ——, 116 S.Ct. 88, 133 L.Ed.2d 45 (1995). The Third Circuit has also directed district courts to "make findings because the legitimacy of settlement classes depends upon fidelity to the fundaments of Rule 23." *Id.* at 794. Since the Court has already made preliminary findings in this case, the issue is whether these findings should be made final.

To obtain class certification, Plaintiffs "must satisfy all of the requirements of Rule 23(a)[1] and come within one provision of Rule 23(b)." *Georgine v. Amchem Products, Inc.,* 83 F.3d 610, 624 (3d Cir.1996). Plaintiffs contend that they meet the requirements of 23(a) as well as 23(b)(3).[2] This Court earlier found the criteria of Rule 23(a) and 23(b)(3) to be fully satisfied and gave its conditional approval to the class. (docs. 46 and 52)

The parties have represented to the Court that to their knowledge there have been no material changes in conditions subsequent to the Court's provisional certification of the class, and the Court, after conducting a hearing, is not aware of any additional information which would alter its initial findings. Therefore, the Court concludes that final certification of the class is appropriate.

### 2. Certification of Final Judgment

■ Plaintiffs seek certification of a final judgment and order under Fed.R.Civ.P. 54(b)[3]. Both Plaintiffs and the Defendants emphasize the need for finality and contend that in the absence of certification of a final judgment under Rule 54(b), the settlement may be subject to attack by third parties. The parties complain that in such an event distribution of the settlement fund would have to await the ordinary appellate process.

Rule 54(b) is designed to "facilitate the entry of judgment on one or more claims, as to one or more parties, in a multi-claim/multi-party action." *Allis–Chalmers Corp. v. Philadelphia Electric Co.,* 521 F.2d 360, 363 (3d Cir.1975). The "rule attempts to strike a balance between the undesirability of piece-

---

1. Paragraph (a) of Rule 23 specifies that:

   One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.
   Fed. R.Civ.P. 23(a).

2. Rule 23(b)(3) provides that a class action may be maintained if the district court finds

   that the questions of law or fact common to members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually

controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the difficulties likely to be encountered in the management of a class action.
Fed.R.Civ.P. 23(b)(3).

3. Fed.R.Civ.P. 54(b) provides in relevant part:

   **(b) Judgment Upon Multiple Claims or Involving Multiple Parties.** When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim or third-party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of a judgment.

meal appeals and the need for making review available at a time that best serves the needs of the parties." *Id.* "Ordinarily an application for a [Rule] 54(b) order requires the [district court] judge to exercise considered discretion, weighing the overall policy against piecemeal appeals against whatever exigencies the case may present." *Bogosian v. Gulf Oil Corp.,* 561 F.2d 434, 441 (3d Cir. 1977) (quoting *Panichella v. Pennsylvania RR.,* 252 F.2d 452, 455 (3d Cir.1958)). Certification of a final judgment under Rule 54(b) is generally disfavored "[and] should not be entered routinely or as a courtesy or accommodation to counsel. The power which this Rule confers upon the trial judge should be used only in the 'infrequent and harsh case' as an instrument for the improved administration of justice." *Allis–Chalmers Corp.,* 521 F.2d at 366.[4]

In the instant case, there are no outstanding nonadjudicated claims or other claims pending against the settlement. Therefore, the Court finds that the Plaintiffs' generalized and speculative contention of prospective harm is not the "infrequent and harsh case" to warrant entry of a Rule 54(b) final judgment. Nor have Plaintiffs made any showing to satisfy the Court that their case presents any sort of exigencies to justify Rule 54(b) treatment.

### 3. Approval of Settlement

■ The parties seek final court approval of their settlement in the amount of $2,450,-000 in cash in addition to interest which has accrued on the settlement fund since June 1995. The class now has been afforded notice of the settlement's proposed terms and an opportunity to comment on them. Prior to granting a request for final approval to the

settlement, the Court must find it to be "fair, adequate, and reasonable." *Walsh v. Great Atlantic & Pacific Tea Co.,* 726 F.2d 956, 965 (3d Cir.1983). Significant weight should be attributed "to the belief of experienced counsel that settlement is in the best interest of the class." *Austin v. Pennsylvania Dep't. of Corrections,* 876 F.Supp. 1437, 1472 (E.D.Pa. 1995). However, due to the risk that a collusive settlement agreement may be reached that fails to satisfy the class, a reviewing court must ascertain that the settlement was the product of "good faith, arms length negotiations" before granting its approval. *Lake v. Nationwide Bank,* 900 F.Supp. 726, 731 (E.D.Pa.1995). *See also,* 2 H. Newberg, *Newberg on Class Actions,* § 11.41 at 11–88 (3rd ed.1992).

"In order for the determination that the settlement is fair, reasonable, and adequate to survive appellate review, the district court must show it has explored comprehensively all relevant factors." *In re General Motors,* 55 F.3d at 805 (citing *Malchman v. Davis,* 706 F.2d 426, 434 (2d Cir.1983)). In conducting this analysis, the Third Circuit has instructed district courts to inform their decisions by the factors outlined in the leading case of *Girsh v. Jepson,* 521 F.2d 153 (3d Cir.1975):

(1) the complexity, expense, and likely duration of the litigation;

(2) the reaction of the class to the settlement;

(3) the stage of the proceedings and the amount of discovery completed;

(4) the risks of establishing liability;

(5) the risks of establishing damages;

(6) the risks of maintaining the class through the trial;

---

4. In exercising discretion under Rule 54(b), the Third Circuit has instructed district courts to consider the following factors: (1) the relationship between the adjudicated and nonadjudicated claims; (2) the possibility that the need for review might or might not be mooted by future developments in the district court; (3) the possibility that the reviewing court might be obliged to consider the same issue a second time; (4) the presence or absence of a claim or counterclaim which could result in set-off against the judgment sought to be made final; and (5) miscellaneous factors such as delay, economic and solvency

considerations, shortening the time of the trial, frivolity of completing claims, expense, and the like. *Allis–Chalmers Corp. v. Philadelphia Electric Co.,* 521 F.2d at 363. The Third Circuit has explained that "depending upon the facts of the particular case, all or some of the above factors may bear upon the trial court's discretion in certifying a judgment as final under Rule 54(b)." *Id.* In this case, the Court finds that either the aforementioned factors are not relevant, or, if relevant, weigh against entry of a Rule 54(b) final judgment.

(7) the ability of the defendants to withstand a greater settlement;

(8) the range of reasonableness of the settlement fund in light of the best possible recovery;

(9) the range of reasonableness of the settlement fund in light of all the attendant risks of litigation.

*Girsh,* 521 F.2d at 157.

A number of factors weigh in favor of approving this settlement. The first *Girsh* factor reflects "the probable costs, in both time and money, of continued litigation." *Bryan v. Pittsburgh Plate Glass Co.,* 494 F.2d 799, 801 (3d Cir.), *cert. denied,* 419 U.S. 900, 95 S.Ct. 184, 42 L.Ed.2d 146 (1974). Unquestionably, this securities fraud class action would be complex and expensive to litigate.

Second, out of the approximately 2,000 plaintiffs comprising this class, there have not been any objections to the settlement nor any opt-outs. The Court is wary of placing too much emphasis on this lack of opposition since experience has shown that members of the class with low individual stakes in the outcome often do not file objections. *See e.g., In re General Motors,* 55 F.3d at 813. Nonetheless, the lack of any objections or requests for exclusion combined with the fact that the parties have represented to the Court that at least some members of the class are sophisticated institutional investors, bolsters the conclusion that the settlement is not unreasonable.

Third, the "stage of the proceedings" factor captures the degree of case development that class counsel have accomplished prior to settlement. *In re General Motors,* 55 F.3d at 814. The Court is persuaded that the opinions of counsel on the issue of settlement were well informed. While Plaintiffs did not take any depositions in the case, they did conduct extensive document review over a seventeen month period and sought expert opinion prior to reaching an agreement with Defendants.

Fourth, proving liability and damages in securities fraud cases is almost always a daunting task. To succeed on their claims under Rule 10b–5, Plaintiffs had the burden of establishing that Defendants' omissions or misstatements were material, caused damage to the class, and that Defendants acted with scienter. *See TSC Industries, Inc. v. Northway, Inc.,* 426 U.S. 438, 96 S.Ct. 2126, 48 L.Ed.2d 757 (1976); *Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 193 n. 12, 96 S.Ct. 1375, 1381 n. 12, 47 L.Ed.2d 668 (1976). Plaintiffs acknowledge that they were faced with the onerous task of putting on complex evidence based on extensive expert testimony to demonstrate the technical problems experienced by Defendants in product development, Defendants' ability to recognize the existence of those problems, and the market's interpretation of the misrepresentations made by Defendants.

This case also presents serious obstacles regarding the calculation of damages. The general measure of damages in Section 10(b) cases is the "out of pocket" damage measure. *See Randall v. Loftsgaarden,* 478 U.S. 647, 662, 106 S.Ct. 3143, 3152, 92 L.Ed.2d 525 (1986). Under this measure, a defrauded buyer may recover "the difference between the purchase price and the value of the stock [i.e. value absent the fraud] at the date of purchase." *Id.* (citing *Green v. Occidental Petroleum Corp.,* 541 F.2d 1335, 1344 (9th Cir.1976)). Since fair value presumably will differ from the stock market price (the latter being inflated by the fraud), expert testimony would have been necessary to establish the amount—and indeed the existence—of actual damages. *See e.g., Sirota v. Solitron Devices Inc.,* 673 F.2d 566, 576–78 (2nd Cir.), *cert. denied,* 459 U.S. 838, 103 S.Ct. 86, 74 L.Ed.2d 80 (1982). Plaintiffs' counsel contend that total damages could exceed $12 million, if all liability and damage issues were decided in Plaintiffs' favor. Defendants contend, however, that Quad's stock price reflected industry and market trends, not the influence of alleged misrepresentations or fraud by any of its officers. As such, Defendants' damages expert would have testified that damages were minimal, even assuming liability. Given these conflicting theories on the question of damages, the outcome of the case would turn on a "battle of experts." Under these circumstances, it would be hazardous to predict how much of a financial

recovery the jury would award Plaintiffs even if liability were shown.

Notwithstanding the above, some factors caution against approval of the settlement. Most notably, Plaintiffs have estimated Defendants' liability to be in the $12 million range based upon expert analysis. Other than referring to the expert's report, Plaintiffs did not present any evidentiary basis for this estimate of damages at the preliminary settlement approval hearing, and have not done so since that time. Therefore, both the maximum liability which could be found in this case, and more importantly, whether the settlement compares favorably to the perceived maximum remains unclear. Ordinarily, this factor alone would give the Court pause, warranting a fuller evidentiary showing. However, in this complex 10(b) securities fraud case, Plaintiffs' most optimal estimate of recovery must be tempered by Defendants' contention supported fully by an expert's report of no damages at all. Viewed in this light, the settlement is certainly in the "range of reasonableness" and "unquestionably better than another 'possibility'—little or no recovery at all." *In re Greeenwich Pharmaceutical Sec. Litig.,* [1995 Transfer Binder] Fed. Sec. L. Rep. (CCH) § 92,519 at 92,522 (E.D.Pa.1995). *See also Lake v. First Nationwide Bank,* 900 F.Supp. 726, 733 (E.D.Pa.1995) (explaining that since the plaintiffs were unlikely to prevail on the issue of liability under § 10 of the Real Estate Settlement Procedures Act, the settlement was within the range of reasonableness under *Girsh* ).

One additional factor, Defendants' ability to withstand a greater judgment is basically neutral since Plaintiffs did not make any evidentiary showing on this issue.

To be sure, the legal and factual difficulties inherent in this case, when added to the uncertainty and expense of a lengthy and complex trial, underscore the desirability of the settlement. The Court finds that applying the *Girsh* factors, under the circumstances of the case, the settlement is fair, adequate, and reasonable. Therefore, the Court will approve the final settlement.

### 4. Approval of the Attorneys' Fee Award

"A litigant who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co., v. Van Gemert,* 444 U.S. 472, 478, 100 S.Ct. 745, 749, 62 L.Ed.2d 676 (1980). The attorneys' fee award requested by class counsel in this case, $796,250, represents 32.5% of the settlement fund. Plaintiffs' counsel argue that their request is reasonable and emphasize that the class was given notice that counsel intended to request attorneys' fees not to exceed 33 and 1/3% of the settlement fund, and that there have not been any objections to the proposed fees.

Nevertheless, as in all class actions settlements, the Court remains obligated to review thoroughly the reasonableness of the fee application before granting its approval. *See In re General Motors,* 55 F.3d at 819–20. There is an acute need for close judicial scrutiny of fee arrangements in common fund class action settlements because of "the danger ... that the lawyers might urge a class settlement at a low figure or on a less-than optimal basis in exchange for red-carpet treatment for fees." *In re General Motors,* 55 F.3d at 768, 820 (quoting *Weinberger v. Great Northern Nekoosa Corp.,* 925 F.2d 518, 524 (1st Cir.1991)). Indeed, "special problems exist in assessing the reasonableness of fees in a class action suit since class members with low individual stakes in the outcome often do not file objections, and the defendant who contributed to the fund will usually have no interest in how the fund is divided between the plaintiffs and class counsel." *Swedish Hosp. Corp. et al., v. Shalala,* 1 F.3d 1261, 1265 (D.C.Cir.1993); *See also,* Court Awarded Attorney Fees, Report of the Third Circuit Task Force, 108 F.R.D. 237, 255 (1985) ("In these situations, the plaintiffs' attorney's role changes from one of fiduciary for the clients to that of a claimant against the fund created for the clients' benefit."). Therefore, the fee application must be subject to "thorough judicial review" to ensure that no overreaching occurs and that counsel and class members alike are treated fairly. *In re General Motors,* 55 F.3d at 819.

There exist two methods of calculating attorneys' fee awards—the percentage of recovery method, under which an attorney receives a fixed percentage of the settlement fund, and the lodestar method, which requires that a court multiply the hours reasonably expended on the litigation by a reasonable hourly rate. *See In re General Motors,* 55 F.3d at 821. The Third Circuit has counselled district courts that in common fund cases the percentage of recovery method to calculate attorneys' fees is ordinarily the one most appropriate, and that the lodestar method should be reserved for statutory fee cases or instances where the nature of the settlement evades the precise evaluation needed for the percentage of recovery method. *See In re General Motors,* 55 F.3d at 820 (" . . . we believe that each method has distinct advantages for certain kinds of actions . . ."). However, "neither the lodestar method nor the percentage of recovery methods, however is mandatory. Thus, the district court has wide discretion to decide which method of fee calculation to apply." *Id.* at 821. In any event, whichever method the district court selects as the primary method for determining the reasonableness of the fee, it is "sensible for a [district] court to use a second method of fee approval to cross check its conclusion under the first method." *Id.*

Since the instant suit involves a straightforward common fund case, the Court will employ the percentage of recovery method as the primary method for determining the appropriate amount of counsel fees. Although no magic formula exists as to what is a reasonable percentage, courts have found fee awards ranging from 19 to 45 percent of the settlement fund to be fair and reasonable. *See In re SmithKline Beckman Corp. Secur. Lit.,* 751 F.Supp. 525, 533 (E.D.Pa.1990). One court of appeals has concluded that the appropriate benchmark that district courts should use for attorney's fee awards in common fund cases is 25% of the amount of the fund. *See In re Pacific Enterprises Sec. Lit.,* 47 F.3d 373, 378 (9th Cir.1995). Another court of appeals has found that the "majority of common fund class action fee awards fall between twenty and thirty percent." *Swedish Hosp. Corp. v. Shalala,* 1

F.3d 1261, 1272 (D.C.Cir.1993); *See also,* 3 H. Newberg, *Newberg on Class Actions* at 190 (2d ed.1985) (stating normal range of common fund fee awards is 20–30%). Likewise, the Court concludes that ordinarily attorneys' fees in a securities common fund case should be 25% of the amount of the fund. Having examined both the fee petition submitted by Plaintiffs' counsel and being thoroughly familiar with this litigation, and finding no significant reason why the Court should adjust the 25% benchmark upward or downward, the Court finds that a fee award of 25% of the settlement fund, representing $612,500, is appropriate in this case. *See also, J/H Real Estate Inc., v. Abramson et al.,* 951 F.Supp. 63 (E.D.Pa.1996) (awarding a 25% attorneys' fee in a common fund case).

The Third Circuit has counselled, however, that even when the district court applies the percentage of recovery method to determine counsel fees, it should cross-validate the result against the lodestar method "to assure that the precise percentage awarded does not create an unreasonable hourly fee." *General Motors Corp.,* 55 F.3d at 822. Under the lodestar method, the Court must first multiply the number of hours spent by class counsel in this litigation by a number representing a reasonable hourly rate. *See Lindy Bros. Builders Inc. v. American Radiator & Standard Sanitary Corp.,* 487 F.2d 161, 167 (3d Cir.1973). After this amount, the lodestar, is determined, the Court may make adjustments as necessary. *See In re Fine Paper Antitrust Litig.,* 751 F.2d 562, 583 (3d Cir.1984).

In their fee petition, counsel calculated the lodestar amount as $487,850. However, counsel provided the Court with only a modicum of supporting information. Counsel only disclosed the total number of hours (1,698) that attorneys at the two law firms involved worked on the case and the respective current billing rates of those attorneys. No further breakdown or description was provided such as detailed time sheets specifying the type of work performed by the individual attorneys working on this matter. Furthermore, counsel did not submit any evidence that the charged rate is the "community billing rate charged by attorneys of special-

ized skill and experience performing work of similar complexity...." *See Student Public Interest Research Group of New Jersey, Inc. v. AT & T Bell Laboratories,* 842 F.2d 1436, 1451 (3d Cir.1988). In the absence of detailed time sheets and evidence of the community billing rate, the Court finds that the lodestar method cannot be applied properly in this case.[5]

Even assuming that counsel could show that the time spent on this matter and the rates charged were reasonable, the lodestar amount of $487,850 would be roughly 20% of the settlement fund, and substantially less than the 25% of the settlement fund, or $612,500, which the Court finds reasonable under the circumstances. Moreover, in light of the lodestar amount, to have granted

**5.** In this case, counsel has requested that the lodestar amount be enhanced by a quality multiplier of 1.632. The Court recognizes that if it did apply the lodestar method, the lodestar could be enhanced with a quality multiplier where the settlement was "achieved with unusual efficiency, and with little expenditure of attorney time and expense." *In re Fine Paper Antitrust Litig.,* 751 F.2d at 589. Nevertheless, the "overall quality of performance ordinarily should not be used to adjust the lodestar, [so as to remove] any danger of double counting." *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air,* 478 U.S. 546, 566, 106 S.Ct. 3088, 3099, 92 L.Ed.2d 439 (1986). Even assuming that the lodestar method based on counsel's submissions was applied in this case, the instant case is not an appropriate one to apply a quality multiplier. To the extent that counsels' skill and experience helped shepherd the case efficiently, this factor was already taken into account in approving counsel's high hourly fee. *See Rainey v. Philadelphia Hous. Auth.,* 832 F.Supp. 127, 130 (E.D.Pa. 1993) ("Normally, the higher the allowed hourly rate commanded based upon skill and experience, the shorter the time it should require an attorney to perform a particular task."). While counsel has trumpeted the results achieved which the Court agrees produced a benefit for the class, the Court has not been left with a firm conviction that, given the Plaintiffs' expert's estimate of $12 million in losses to the class, the ultimate settlement of $2,450,000 million represents an extraordinarily favorable result. Therefore, applying a quality multiplier in this case would result in double counting on top of counsels' "high" hourly rates.

The Court also recognizes that in certain cases, it may augment the lodestar with a contingency multiplier. A contingency multiplier reflects "the contingent nature of [the lawsuit's] success" and the "delay in the receipt of payment for

Plaintiff's counsel's requested fee of $796,450 would have created an "unreasonable hourly" fee for counsel. *In re General Motors,* 55 F.3d at 822.

**5. Approval of Reimbursement Expenditures**

■ In their petition and expense report affidavits, Plaintiffs' counsel seek reimbursement for out-of-pocket expenses and costs in the total amount of $49,296.26. Counsel from one of the two law firms involved ("counsel #1") requested reimbursement for $39,662.01 with the majority of his reported expenses attributed to expert witness fees and travel expenses while counsel from the other firm ("counsel #2") requested reimbursement for $9,634.25 with the majority of his

services rendered." *Lindy Bros. Builders, Inc. v. American Radiator & Standard Sanitary Corp.,* 540 F.2d 102, 117 (3d Cir.1976). In *City of Burlington v. Dague,* 505 U.S. 557, 112 S.Ct. 2638, 120 L.Ed.2d 449 (1992), the Supreme Court ruled that the first prong of the contingency multiplier, i.e. the contingent nature of the lawsuit's success, could not be used to increase the lodestar under two federal fee-shifting statutes. This prohibition was subsequently applied by the Third Circuit in a common fund case. *See In re General Motors,* 55 F.3d at 822.

The Supreme Court's decision in *Dague* did not, however, rule out a contingency multiplier based upon a delay in counsel's receipt of its fees. Furthermore, the Third Circuit has advised district courts that under the second prong of the contingency multiplier a "percentage of adjustment used to reflect the delay in receipt of payment [of counsel's fee] may be appropriate" to account for "the time value of compensation long delayed, when compared with normal billing and collection practice of law firms for fees and expenses." *In re Fine Paper Antitrust Litigation,* 751 F.2d 562, 583 (3d Cir.1984) (citing *Lindy Bros. Builders, Inc. v. American Radiator & Standard Sanitary Corp.,* 540 F.2d 102, 117 (3d Cir. 1976)). However, where the "lodestar itself is based on present hourly rates, rather than the lesser rates applicable to the time period in which the services were rendered, the harm resulting from delay in payment [of counsel's fee] may be largely reduced or eliminated." *Copeland v. Marshall,* 641 F.2d 880, 893 n. 23 (D.C.Cir.1980). Since Plaintiffs' counsel in this case have indicated only that they have used their present hourly rates to calculate the lodestar amount, rather than using any lower billing rates which may have been applicable during the period in which the services were rendered, the Court finds that the harm resulting from delay in payment is nonexistent. Therefore, the Court

reported expenses attributed to costs from legal research performed on LEXIS. However, counsel for both firms provided the Court with a modicum of supporting information, which listed only general expense categories and their respective amounts.

Therefore, pursuant to the Court's request, counsel submitted itemized reports detailing their out-of-pocket expenses including travel expenses for air fare, meals, hotels, and rental cars, expert fees, filing fees, and photocopying and mailing costs. While counsel #1 had requested $39,662.01 in expenses in his petition and expense report affidavit, he has documented only $37,931.48 in itemized expenses in his submissions to the Court.[6] The Court finds that the itemized expenses are adequately documented and reasonable, and therefore will reimburse counsel for the amount of the itemized expenses. Additionally, counsel #2 seeks reimbursement for legal research performed on LEXIS in the amount $7,831.10. While the Third Circuit has explained that recovery for out-of-pocket expenses for computer-aided legal research performed on LEXIS is entirely appropriate, it has nevertheless cautioned that "the amount of use must be reasonable in order to be allowed." *Wehr v. The Burroughs Corporation*, 619 F.2d 276, 284 (3d Cir.1980).

■ In his submissions to the Court, however, counsel #2 did not describe the nature of the research performed on LEXIS or the total number of hours billed for LEXIS research. Without such documentation, the Court cannot determine whether the time spent reflects legal searches on LEXIS or instead was spent on time-consuming LEXIS print-outs of search results from federal reporter volumes. The latter, of course, may otherwise have been obtained, at no cost to the class, from counsel's law library.[7] Under the circumstances, the Court finds that $4000 (roughly 50%) is a reasonable cost for the

legal searches performed by counsel on LEXIS and will reimburse counsel for that amount.

Furthermore, in his itemized submissions to the Court, counsel #2 documented $585.25 in travel expenses and photocopying costs. The Court finds these expenses are adequately documented and reasonable, and therefore will reimburse counsel for that amount.

Based on the above, the Court will reimburse counsel in out-of-pocket expenses for a sum total of $42,516.73.

### 6. Approval of a Class Representative Fee

■ Plaintiff class representative Diane D. Pozzi seeks approval of payment to compensate her for her role in initiating this shareholders class action and subjecting herself to alleged hostility and threats by the corporate defendant. The requested payment is $7,500. Even if the Court was inclined to allow this type of compensation, there is no evidence on the record that the class representative was in fact subjected to any physical threats or hostility on the part of the Defendants.

The Court, however, will compensate the class representative for the time she spent on matters connected to the litigation in this case. Pursuant to the Court's request, the class representative has furnished the Court with an adequate accounting that the time she spent working on matters related to this litigation is approximately forty hours. Based on the time records and the representations made by counsel as to the activities undertaken by the class representative on behalf of the class, the Court shall approve a class representative fee totaling $1600 (40 hours at a rate of $40.00 per hour) as compensation for the actual time which the class representative spent on this litigation.[8] *See*

---

will not enhance the contingency multiplier based upon counsel's delay in receipt of fees.

**6.** In his expense report affidavit, counsel #1 reported $810.79 in "phone/fax" expenses and $919.44 in "postage/courier" expenses. Because counsel did not provide the Court with adequate documentation regarding these expenses, the Court is unable to reimburse counsel for such costs.

**7.** The cost of accessing materials in counsel's law library is part of counsel's overhead and therefore not compensable.

**8.** The Court recognizes that under the Private Securities Litigation Reform Act enacted by Congress in 1995, ("the Act"), Pub.L. 104–67, 109 Stat. 737 (1995), a class representative fee in the form of a bounty payment, such as has been requested in this case by the class representative

*e.g., Lake v. First Nationwide Bank,* 900 F.Supp. 726, 736–37 (E.D.Pa.1995) (awarding a class representative fee of $500 to both class representative to compensate them for their actual time and expenses). No other fee, other than the payment to which she may be entitled as a member of the class, shall be paid to the class representative.

## III. CONCLUSION

The Court grants final certification to the proposed class and approves the settlement agreement between the parties. The Court denies the request for certification of a final judgment and order under Rule 54(b). The Court further awards Plaintiffs' counsel attorneys' fees in the amount of $612,500.00, and reimbursement for litigation costs in the amount of $42,516.73. A class representative fee in the amount of $1600 is awarded to Diane D. Pozzi to account for the actual time she spent during her involvement with the litigation.

Appropriate findings and an order shall be entered.

### FINDINGS AND ORDER

**And Now,** this **24th** day of **January, 1997,** the Court makes the following findings and issues the following order:

This matter came for a hearing before the undersigned on December 13, 1996, on the motion of Plaintiffs for the final approval of the class action settlement entered into between the parties to the action. Defendants Quad Systems, Inc., David W. Smith, David H. Young, and Anthony R. Drury (Quad and the individual defendants are hereinafter referred to as "Defendants"), by and through their counsel, appeared in support of said motion.

Plaintiffs were represented by Dennis J. Johnson of the Law Offices of Dennis J. Johnson, 1690 Williston Rd., S. Burlington, Vermont; and Stuart H. Savett and Barbara A. Podell of the law firm of Savett, Frutkin, Podell, and Ryan, P.C., 320 Walnut Street,

Philadelphia, Pennsylvania. Quad was represented by R. Nicholas Gimbel of the law firm of Hoyle, Morris & Kerr, One Liberty Place, 1650 Market Street, Philadelphia, Pennsylvania. The issues with respect to final certification of the class, certification of a final judgment and order under Fed.R.Civ. Pro. 54(b), final approval of the proposed settlement, attorneys' fees and costs sought by Plaintiff's counsel, reimbursement of out-of-pocket expenses sought by Plaintiffs' counsel, and award of a class representative fee were briefed and argued. Based upon such briefs and arguments, and upon other files and records in this matter, the Court **FINDS** and **ORDERS** as follows:

1. This action was commenced against Defendants in the United States District Court in the Eastern District of Pennsylvania, on March 10, 1995.

2. The claims asserted by Plaintiffs allege violations of sections 10(b) and 20(a) of the Securities and Exchange Act of 1934, the rules and regulations of the Securities and Exchange Commission promulgated thereunder, and a common law cause of action for negligent misrepresentation.

3. This action may for all purposes be maintained as a class action pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3), with the class consisting of all persons who purchased common shares of Quad stock between December 23, 1994, and March 7, 1995 ("the class period").

4. The lead plaintiff as class representative fairly and adequately represents the interest of the class.

5. The notice previously given to class members in this action satisfies the requirements of due process and Rule 23 of the Federal Rules of Civil Procedure.

6. The settlement is fair, adequate, and reasonable as to each member of the class.

7. Each member of the class is bound by the terms of the settlement agreement, in-

---

as compensation for her role in initiating the class action, is prohibited. Under the Act, the class representative cannot accept any payment for serving as a representative party beyond his or her *pro rata* share of the settlement or final

judgment. *See* 15 U.S.C. § 78u–4(a)(2)(A)(vi). Since Congress intended the Act to be applied prospectively, however, this prohibition is not implicated in the instant class action, which commenced prior to the Act's passage.

 

cluding those regarding the release and covenant not to sue provided for in the settlement agreement between the parties.

8. All sums to be paid under the terms of the settlement agreement shall be credited or paid to members of the class, as provided in the settlement agreement.

9. As provided for in the settlement agreement, Plaintiffs' counsel, acting as joint escrow agents for the settlement fund, are granted leave to amend to seek reimbursement for reasonable settlement administration costs and expenses.

10. All claims in the litigation against Defendants are **DISMISSED** on the merits and with prejudice. Each member of the class is permanently **ENJOINED** from bringing against Defendants or any of its shareholders, directors, officers, employees or other released parties, as identified in the settlement agreement, any claim regarding the matters released in this litigation, as identified in the settlement agreement. Defendants are permanently **ENJOINED** from bringing against any member of the class and their agents, including Plaintiffs' counsel and experts, any claim regarding the matters released in this litigation, as identified in the settlement agreement.

11. The Court hereby retains jurisdiction over all matters in this litigation including but not limited to the interpretation, administration, implementation, effectuation, and enforcement of the settlement agreement between the parties.

12. The Court has reviewed the petition for attorneys' fees submitted by the Law Offices of Dennis J. Johnson and the law firm of Savett, Podell, Frutkin, and Ryan and has determined that counsel shall receive, as compensation for their legal services, $612,500, to be paid from the settlement fund in accordance with the terms of the settlement agreement.

13. The Court has reviewed the petition for reimbursement of out-of-pocket expenses by the Law Offices of Dennis J. Johnson and the law firm of Savett, Podell, Frutkin, and Ryan, and has determined that counsel shall receive, as reimbursement for their litigation costs and expenses, $42,516.73, to be paid

from the settlement fund in accordance with the terms of the settlement agreement.

14. The Court has reviewed the request for the class representative fee and has concluded that a fee totaling $1600 is appropriate, and shall be paid in accordance with the memorandum filed by the Court on this date.

**AND IT IS SO ORDERED.**