**LOCAL 56, UNITED FOOD AND COMMERCIAL WORKERS UNION, et al., Plaintiffs,**

v.

**CAMPBELL SOUP COMPANY, et al., Defendants.**

**Civil Action No. 93–MC–276(SSB).**

United States District Court,
D. New Jersey.

Feb. 25, 1997.

Alan M. Sandals, Charles P. Goodwin, Berger & Montague, P.C., Philadelphia, PA, Jo-

seph D. Shein, Joseph D. Shein, P.C., Philadelphia, PA, Theodore Lieverman, Tomar, Simonoff, Adourian, O'Brien, Kaplan, Jacoby & Graziano, Haddonfield, NJ, Ted Iorio, Brenda Meyer, Kalniz, Iorio & Feldstein, Toledo, OH, Renee L. Bowser, UFCW International Union, AFL–CIO & CLC, Washington, DC, for Plaintiffs.

Faith R. Greenfield, Campbell Soup Company, Camden, NJ, Mari M. Gursky Shaw, Akin, Gump, Strauss, Hauer & Feld LLP, Philadelphia, PA, for Defendants.

Robert M. Goldich, Wolf, Block, Schorr and Solis–Cohen, Philadelphia, PA, for Amicus Curiae.

**OPINION**

BROTMAN, District Judge.

Presently before the court are petitions by counsel for plaintiffs for an award of attorneys' fees and reimbursement of litigation expenses. Counsel for the plaintiff class filed a Joint Petition of Plaintiffs' Counsel for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses (hereinafter "Joint Petition") requesting $3.5 million: attorneys' fees in the amount of $3,239,373 and expenses in the amount of $260,627.16.[1] Subsequently, counsel for plaintiffs Locals 56 and 911, United Food and Commercial Workers, and individual plaintiffs Joseph Capitanio and Wynetta Capitanio, Fred W. Ramsay and Kathleen D. Ramsay, Henry Arkema, Jr., Donald Brown, Ivan F. Mather, and William Wise, Sr. (hereinafter "Separate Petitioners") filed a separate, additional Supplemental Memorandum of Law on Award of Attorneys' Fees (hereinafter "Supplemental Petition").[2] The Supplemental Petition requests an award of attorneys' fees and costs not to exceed $2.5 million.[3]

1. The Joint Petition was filed jointly by all counsel for the plaintiff class.

2. The Separate Petitioners are also signatories to the Joint Petition; their position regarding attorneys' fees diverges from the Joint Petition to the extent that Separate Petitioners propose a lower cap on the fee award than the Settlement Agreement provides. *See infra* sec. II.B.

## I. BACKGROUND

### A. Generally

The requests for attorneys' fees and costs derive from a multi-million dollar class action settlement involving more than 12,000 former employees of Campbell Soup Company (hereinafter "Campbell") and their eligible spouses and dependents (hereinafter "Retirees") who participated in Campbell's Medical Plan for Retired Employees. In the original action, various groups of Retirees consolidated a series of individual lawsuits against Campbell, claiming that Campbell had violated their rights under the Employee Retirement Income Security Act of 1974 (hereinafter "ERISA"), 29 U.S.C. § 1001 *et seq.* and the Labor Management Relations Act, 29 U.S.C. § 141 *et seq.*, by reducing the Retirees' medical plan benefits.

Settlement, consummated on November 26, 1996, was achieved after four years of hotly contested litigation. After providing notice to class members and holding a hearing on January 10, 1997 pursuant to Fed. R.Civ.P. 23(e), the court approved as "fair, reasonable, and adequate" a settlement figure in the amount of $114,500,000. In so doing, the court took into account the factors set forth in *Girsh v. Jepson,* 521 F.2d 153, 157 (3d Cir.1975). *See also In re General Motors Corp. Pick–Up Truck Fuel Tank Products Liab. Litig.,* 55 F.3d 768 (3d Cir. 1995). At this post-settlement juncture, the court must consider the related issues of attorneys' fees and reimbursement of expenses.

### B. The Settlement

To lend context to the court's evaluation of counsel's requests for fees and expenses, the court will describe in broad strokes the settlement and the benefits it provides to class members. As a preliminary matter, the court notes that the settlement—especially

3. In determining the appropriate amount of attorneys' fees, the court also considers issues raised by the defendant's insurer, Federal Insurance Company (hereinafter "Federal"). At a hearing on January 10, 1997, the court denied Federal's Motion for Leave to Intervene, but permitted Federal to file briefs as *amicus curiae.*

its thoroughly developed structure—represents one of the most innovative and forward-looking resolutions that this court has approved in the twenty-two years of its tenure. The settlement recognizes not only the complex legal and financial concerns of the parties but also the intangible considerations surrounding the long-time relationship between Campbell and the Retirees. To that end, the settlement provides a unique economic and management structure as well as benefits that altogether best serve the interests of all parties and are, indeed, most fair, reasonable, and adequate.

In particular, further to the terms of the settlement, Campbell will pay the actuarial present value of $114.5 million toward the cost of continued medical coverage for the Retirees for the rest of their lives. That figure will grow each quarter at the fixed interest rate of 7.75% as applied to the unspent balance of the settlement amount. In addition, reasonable contributions from the Retirees will supplement the settlement amount. Altogether, the money will fund a continuing program of medical benefits for the Retirees for their lifetimes—an unprecedented guarantee of coverage.

Moreover, while Campbell will administer the benefits plan, an advisory committee of Retirees will monitor and enforce the company's compliance with the settlement; thus, class members will maintain a continuous ability to ensure that they actually receive the benefits their counsel negotiated on their behalf. Any disputes that arise and are not resolved in the course of the implementation of the settlement will ultimately be subject to this court's jurisdiction. Finally, the court notes that the settlement provides an array of alternative benefit plans in an attempt to accommodate regional differences in the quality of health care. In other words, the settlement anticipates systemic pitfalls and attempts to provide workable, economic alternatives that will secure benefits for class members.

## II. ATTORNEYS' FEES

### A. The Law Governing Common Fund Cases

 Attorneys who represent a class and create a settlement fund are entitled to recover for their legal services from that fund under the common fund doctrine. *General Motors,* 55 F.3d at 820 n. 39. To calculate reasonable counsel fees in common fund cases, courts may use two different methods: the lodestar method or the percentage-of-recovery method. Under the former, a court first considers the attorneys' time records and determines whether these and the billing rates are reasonable.[4] *Lindy Bros. Builders, Inc. v. American Radiator & Standard Sanitary Corp.,* 487 F.2d 161, 167 (3d Cir.1973). Then, the court multiplies the number of hours expended by the hourly rate to calculate the fee "lodestar." *General Motors,* 55 F.3d at 819 n. 37. This figure may not be "enhanced" by applying a multiplier to account for the contingent nature of the success of the litigation or other considerations; rather, the simple lodestar result represents the fee award under this method. *City of Burlington v. Dague,* 505 U.S. 557, 112 S.Ct. 2638, 120 L.Ed.2d 449 (1992); *General Motors,* 55 F.3d at 822.

 The percentage-of-recovery method, on the other hand, involves a different calculation of the fee award and, more important, is the favored method in this Circuit. *Id.* at 821–22; *Court Awarded Attorneys' Fees, Report of the Third Circuit Task Force,* 108 F.R.D. 237 (1985). Under this approach, the court awards counsel a percentage of the amount recovered for the class in order to reward counsel for their success or penalize them for their failure. *Blum v. Stenson,* 465 U.S. 886, 900 n. 16, 104 S.Ct. 1541, 1550 n. 16, 79 L.Ed.2d 891 (1984); *General Motors,* 55 F.3d at 819 n. 38, 821. This method also precludes the manipulation of factors affecting the fee award by, for example, cutting short attempts to prolong litigation to enhance the fee (a recognized flaw of the lodestar method). *Id.* at 821–822;

---

**4.** The attorney's legal reputation, status, and experience inform the reasonableness of the hourly rate. *General Motors,* 55 F.3d at 819 n. 37.

*Third Circuit Task Force,* 108 F.R.D. at 246–49. Still, a court may (but need not) calculate the lodestar to double check the fee it awards under the percentage-of-recovery method. *General Motors,* 55 F.3d at 821 & n. 40.

### B. Counsel's Requests

Counsel for the plaintiff class urge the court to adopt the percentage-of-recovery approach to calculate their legal fees. They request an award of $3,239,373.00. This figure represents 2.829% of the $114,500,000.00 settlement obtained for the class. Using the lodestar method, the court would apply a multiplier of 2.39 to a lodestar of $1,356,641 to achieve the requested award amount.[5]

The Separate Petitioners propose a cap of $2,500,000 on attorneys' fees. They contend that while the Settlement provides for an award of up to $3.5 million in attorneys' fees and costs, the court should only award $2.5 million and allow the additional one million dollars to be used to provide benefits for class members. The Separate Petitioners assert that the court may award either a percentage of the common fund or perform a lodestar analysis and then adjust the lodestar to accommodate certain considerations such as risk and quality of legal assistance. To achieve the lower attorneys' fee award, the Separate Petitioners propose that this court calculate the lodestar and apply a multiplier of 1.65. Alternatively, such an award represents 1.95% of the $114.5 million settlement. The Separate Petitioners do not assert that the request set forth in the Joint Petition is unreasonable; indeed, Separate Petitioners agree that there is a range of reasonableness for the appropriate attorneys' fees and suggest that 1.9, 2.3, even 10 percent would be a reasonable award in this case. They claim, however, that a cap of $2.5 million for attorneys' fees and costs will achieve a result that

will both properly reward class counsel and provide additional benefits to their clients, the class.

Finally, in its *amicus curiae* brief, Federal argues that an award calculated under the lodestar method, unenhanced by the application of a multiplier, will sufficiently and fully compensate counsel for their efforts in achieving settlement in this case. Federal contends that any greater amount would be unreasonable. Moreover, Federal asserts that *City of Burlington v. Dague* precludes the use of both a multiplier and the percentage-of-recovery method of calculating fees and, instead, requires the court to apply the pure lodestar method in light of ERISA's fee-shifting provision.

### C. Discussion

 The choice of methodology used to calculate attorneys fees "rest[s] within the district court's sound discretion." *General Motors,* 55 F.3d at 821. Guided by principles set forth by courts in the Third Circuit, the court here determines that in this case the percentage-of-recovery approach is most appropriate. Although the claims in the underlying class action were brought under ERISA, which contains a fee-shifting provision, the fact that the settlement creates a fund that buys benefits for class members and provides a sum certain from which the fee award is to be paid counsels the court to apply "common fund" principles and the percentage-of-recovery method. *Accord In re Unisys Corp. Retiree Med. Benefits ERISA Litig.,* 886 F.Supp. 445, 456, 459–60 (E.D.Pa. 1995); *McLendon v. Continental Group, Inc.,* 872 F.Supp. 142, 154–57 (D.N.J.1994); *see also In re Plastic Tableware Antitrust Litig.,* Master File No. 94–CV–3564, 1995 WL 723175, at *1, 1995 U.S. Dist. LEXIS 18166, at *2–3 (E.D.Pa. November 30, 1995).[6]

---

**5.** In their Joint Petition, counsel for the plaintiff class argue in the alternative that their fee request is reasonable under a lodestar analysis as well. *See also infra* sec. II.C.

**6.** Federal's claim that *Dague* prevents this court from performing a percentage-of-recovery calculation is in error. In *General Motors,* the Third Circuit emphasized the restrictions of *Dague* only insofar as the district court had improperly ap-

plied a multiplier to enhance the lodestar-calculated attorneys' fee. Other circuits as well have stated more expressly that *Dague* does not govern common fund fee awards. *See In re Thirteen Appeals Arising Out of San Juan Dupont Plaza Hotel Fire Litig.,* 56 F.3d 295, 308 (1st Cir.1995); *In re Washington Pub. Power Supply Sys. Sec. Litig.,* 19 F.3d 1291, 1300 (9th Cir.1994); *Swedish Hosp. Corp. v. Shalala,* 1 F.3d 1261 (D.C.Cir. 1993).

■ The court rejects the lodestar analysis in this case in light of its widely recognized shortcomings, especially as applied to common fund situations.[7] *See General Motors,* 55 F.3d at 821; *Third Circuit Task Force,* 108 F.R.D. at 246–53, 255–58. Similarly, the court declines to reduce the negotiated cap on attorneys' fees from $3.5 million to $2.5 million as suggested by the Separate Petitioners. Although such a downward adjustment would necessarily increase the amount of money available to the plaintiff class, the court believes that the resulting lower attorneys' fee will not reward counsel for plaintiffs sufficiently for their diligence and skill in crafting the settlement. As such, even after deducting $3.5 million dollars from the fund that finances the class members' benefits, the remaining monies adequately allow for the successful implementation of a fair and reasonable settlement plan.

■ In applying "common fund" principles and a percentage-of-recovery calculation, the court must protect both class and counsel. In particular, the court must ensure that counsel receive appropriate compensation for their efforts in generating the fund from which class members benefit; otherwise, the class would be unjustly enriched by obtaining a plum reward for a mere pittance. In approving the settlement, the court acknowledged—and acknowledges now again—the complexity of the issues in this case, the significant attendant risks of proceeding with litigation, and the tenacity and vigor with which all counsel represented their clients' interests. The efforts of counsel over a period of four years brought about the fair, reasonable, and adequate result of this monumental settlement which guarantees 12,000 class members medical benefits for the remainder of their lives; these efforts must be rewarded properly and counsel compensated appropriately.

■ As noted previously, counsel for the plaintiff class have requested an attorneys' fee award in the amount of 2.829% of the $114,500,000.00 settlement figure. At the January 10 hearing during which the court approved the settlement as fair, reasonable and adequate, only 134 of the 12,000 class members voiced concern or opposition to the settlement; all other class members approved it in its entirety. In the same vein, class members did not enter any objections to the request for attorneys' fees, not in written form nor in person at the hearing for approval of the settlement.

On their own accord and in recognition of their clients' limited financial means, counsel for the plaintiff class have requested an attorneys' fee award at a percentage rate far below the customary amount courts have granted in comparable cases. *See General Motors,* 55 F.3d at 822 (noting class action fee awards range from 19 to 45%); *Unisys,* 886 F.Supp. at 461–62 (noting percentage-of-recovery awards range 19 to 45% generally, 4 to 10% where fund is between $100 and $200 million). That request—for 2.829% of a $114,500,000 settlement—this court finds reasonable, especially in light of both the size and the unique structure of the settlement counsel achieved for the class. An award of $3,239,373 provides just compensation for experienced counsel who wagered significant sums over the course of several years and achieved a tremendous and invaluable result for their clients. The class members, in turn, retain all that the settlement provides; they do not lose any of the negotiated benefits on account of an attorneys' fee and costs award that equals the "cap" on such an award set forth in the settlement.

### III. EXPENSES

Plaintiffs' counsel request reimbursement for expenses and costs in the amount of $260,627.16. This figure is uncontested.

---

7. Because a court may cross-check the percentage-of-recovery award by calculating the lodestar, *see General Motors,* 55 F.3d at 820–21 & n. 40, the court here has reviewed counsel's submissions regarding hours spent and rates charged and finds same reasonable under the circumstances. Using the lodestar, the fees amount to $1,356,641. Although the court recognizes that $3,239,373 is more than two times the lodestar, the court nevertheless finds such an award fair and reasonable under the circumstances. *Accord J/H Real Estate Inc. v. Abramson,* Civil Action Nos. 95–4176, 95–7180, 1996 WL 750053, at *3 (E.D.Pa. Dec. 30, 1996) (fee award more than 2.5 times the lodestar is "generous but fair premium").

**1006**

Moreover, counsel have provided the court comprehensive documentation to support their request. Most important, the extensive and complex nature of this sizeable class action, the great effort expended by all counsel involved, and the necessity for incurring the expenses, all together render counsel's request fair and reasonable. The court approves an award of $260,627.16 in costs and expenses to plaintiffs' counsel.

## IV. CONCLUSION

For the foregoing reasons, the court awards to counsel for plaintiffs attorneys' fees in the amount of $3,239,373 and reimbursement of costs and expenses in the amount of $260,627.16. The court will enter an appropriate order.

### ORDER

THIS MATTER having come before the court on plaintiffs' counsel's petitions for attorneys' fees and costs;

The court having considered the petitions of counsel and the submissions of *amicus curiae;*

For the reasons set forth in the court's opinion of this date;

IT IS this 24 day of February, 1997 HEREBY

**ORDERED** that counsel for plaintiffs are awarded attorneys' fees in the amount of $3,239,373 and reimbursement of costs and expenses in the amount of $260,627.16. These amounts are to be deducted from the Settlement Amount. These awards shall be paid in cash by Campbell Soup Company as provided in paragraphs 6.2.1 and 6.2.2 of the Settlement Agreement. These awards will bear simple interest at the rate per annum of 5% or prime (calculated at the rate per annum equal to the prime rate publicly announced from time to time by Morgan Guaranty Trust Company of New York in New York City), whichever rate is lower, from the date of this Order until the date the awards are paid, which interest shall be credited against and reduce the Settlement Amount. Counsel for plaintiffs may petition the Court for award of additional fees and expenses relating to the consummation and adminis-

tration of the settlement. Such supplemental petitions may be made without notice to the class.