

2000 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

2-7-2000

# Brytus v. Spang & Company

Precedential or Non-Precedential:

Docket 98-3627

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2000

## Recommended Citation

"Brytus v. Spang & Company" (2000). *2000 Decisions.* Paper 21.
http://digitalcommons.law.villanova.edu/thirdcircuit_2000/21

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2000 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed February 7, 2000

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

NO. 98-3627

JEAN E. BRYTUS; JOHN LAZOR; WHEAT GIACOBBE;
JOHN STANKO; STEVE KOTYK; ALEX WARCHOLAK, and
others similarly situated; JOHN KOTYK; SAM BORIELLE,
JR., and others similarly situated; EDWARD J. GOLONKA,
and others similarly situated

v.

SPANG & COMPANY; UNION NATIONAL BANK; PENSION
PLAN, for Former Bargaining Unit Employees of Fort Pitt
Bridge and Electric Weld Divisions at Cannonsburg, PA
Plant; UNITED STEELWORKERS OF AMERICA,
AFL-CIO-CLC., a labor organization

(D.C. Civil No. 88-02548)

EDWARD J. GOLONKA, and others similarly situated

v.

SPANG & COMPANY; PENSION PLAN, for Former
Bargaining Unit Employees of Fort Pitt Bridge and Electric
Weld Divisions at Cannonsburg, PA Plant; UNITED
STEELWORKERS OF AMERICA

(D.C. Civil No. 91-01041)

DANIEL P. MCINTYRE, ESQ. and SCHWARTZ,
STEINSAPIR, DOHRMANN & SOMMERS, LLP,*
         Appellants

(*Pursuant to Rule 12(a), F.R.A.P.)

On Appeal from the United States District Court
for the Western District of Pennsylvania

(D.C. Civil No. 88-cv-02548)
(District Judge: Hon. Donald J. Lee)

Argued: July 30, 1999

Before: SLOVITER, NYGAARD and STAPLETON,
Circuit Judges

(Filed February 7, 2000)

          Daniel P. McIntyre (ARGUED)
          Miami Beach, Florida 33119

          William T. Payne
          Schwartz, Steinsapir, Dohrmann
           & Sommers, LLP
          Pittsburgh, PA 15223

           Attorneys for Appellants

          Carl B. Frankel
          General Counsel
          United Steelworkers of America
          Pittsburgh, PA 15222

          Jeremiah A. Collins (ARGUED)
          Bredhoff & Kaiser, P.L.L.C.
          Washington, D.C. 20036

           Attorneys for Appellee,
           United Steelworkers of America

OPINION OF THE COURT

SLOVITER, Circuit Judge.

Counsel for a class of plaintiffs who were successful in their suit under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. SS 1001-1461, against the sponsor of a pension plan who had terminated the plan and seized the surplus plan assets sought counsel fees, both under the statutory fee shifting provision and from the fund recovered on behalf of the class. The employer/plan

2

sponsor agreed to pay the successful plaintiffs $460,000 in attorney's fees and expenses, pursuant to ERISA's statutory fee provision. The union representing the employees, which opposed payment of any additional fee from the participants' fund, intervened and objected to any additional fees from the fund awarded on behalf of the plan participants and beneficiaries. The District Court denied counsel's application for recovery of fees from the common fund, a position it reaffirmed on reconsideration. Counsel appeals. In reviewing the award of counsel fee, this court determines whether the District Court abused its discretion, see Silberman v. Bogle, 683 F.2d 62, 64-65 (3d Cir. 1982), although in this case the scope of review will be discussed in more detail hereafter.

I.

In 1988 and 1989, counsel initiated two lawsuits on behalf of eight individual plaintiffs against plaintiffs' former employer Spang & Company ("Spang"), alleging that Spang violated ERISA by failing to distribute surplus pension plan assets to retired workers and violated the Labor Management Relations Act ("LMRA"), 29 U.S.C.S 185, by breaching a labor agreement. At the inception of the litigation, the individual plaintiffs assigned their right to a fee award under ERISA to counsel in exchange for counsel's services. Those two lawsuits were later consolidated with a similar lawsuit filed by other plaintiffs and all three suits ultimately were certified as a class action.

In 1995, the District Court, relying on our prior decision in Delgrosso v. Spang & Co., 769 F.2d 928 (3d Cir. 1985) (relating to a similar pension fund at a different Spang plant), found that Spang had wrongfully acquired the surplus assets of an ERISA-protected retirement fund instead of distributing the surplus proportionately to the retirees as required by the pension plan. The court ordered Spang to pay the entire amount of the reversion which Spang had taken when the pension plan terminated, plus interest since August 31, 1988. As a result, the class received approximately $12,500,000. We affirmed the judgment of the District Court. See Brytus v. Spang & Co.,

3

79 F.3d 1137 (3d Cir.) (unpublished table decision), cert. denied, 519 U.S. 818 (1996).

After the District Court had completed the merits phase, the litigating plaintiffs sought reasonable attorney's fees under the statutory fee provision of ERISA, 29 U.S.C. S 1132(g)(1); in the same motion, two of the counsel for the plaintiff class,1 Daniel P. McIntyre and William T. Payne (referred to herein as "counsel"), "also invoke[d] the common fund doctrine as warranting a recovery of fees out of the fund they have recovered on behalf of the class." App. at 224. Spang did not contest the right of the litigating plaintiffs to recover from it reasonable attorney's fees under the fee provision of ERISA, objecting only as to the hourly rates and costs claimed. The United Steelworkers Association (the "Union") intervened to oppose counsel's motion for the recovery of fees from the common fund.

In its first Memorandum Order on this issue, dated July 14, 1997, the District Court distinguished between counsel's entitlement to reasonable statutory fees and expenses under ERISA and under a common-fund theory. It noted the Union's position that because the action was

litigated to judgment under the fee-shifting provision of
ERISA, counsel cannot also recover fees under a common
fund theory. However, the District Court did not make such
a determination as a matter of law, but held that"under
the facts and circumstances of this case," counsel were not
entitled to recover fees pursuant to a common fund theory.
In re Spang & Co. Litig., Nos. 88-1548, 91-1041, slip op. at
2 (W.D. Pa. July 14, 1997) (hereafter "July 14 slip op.").

Counsel moved for reconsideration of that order,
asserting that they had not had an opportunity tofile a
brief in response to the Union's opposition to a common
fund fee. Counsel argued that they should be awarded a fee
of 20 to 30 percent of the then-$11,500,000 dollar common
fund, or approximately $2,300,000 to $3,450,000. Upon
reconsideration, the District Court affirmed its earlier order,
holding that in its discretion a reasonable fee to be paid by
Spang pursuant to the ERISA fee provision was warranted,

_____

1. In contrast, the attorney who represented the plaintiffs in the third
suit did not move for additional fees.

                                    4

but that an additional fee award to be paid from the
common fund was not. See In re Spang & Co. Litig., Nos.
88-2548, 91-1041, slip op. at 5-6 (W.D. Pa. August 15,
1997) (hereafter "August 15 slip op.").

Counsel appealed from that order. However, because the
District Court had not yet quantified the amount of
statutory fees, we held the order was not final and
dismissed the appeal for lack of jurisdiction. See Brytus v.
Spang & Co., 151 F.3d 112 (3d Cir. 1998). Now that the
statutory fee award has been quantified, we have
jurisdiction pursuant to 28 U.S.C. S 1291 over counsel's
renewed appeal from the final order denying additional fees
from the common fund.

II.

Under what has been denominated the "American Rule"
for payment of fees, "the prevailing litigant is ordinarily not
entitled to collect a reasonable attorneys' fee from the
loser." Alyeska Pipeline Service Co. v. Wilderness Society,
421 U.S. 240, 247 (1975). Instead, attorneys are paid
pursuant to contract with their clients. Over the years, a
widespread exception has grown as an increasing number
of statutes have authorized payment of attorney's fees by
one party to the party that prevailed. The ERISA statutory
fee provision is such a congressional enactment. It provides
that "the court in its discretion may allow a reasonable

attorney's fee and costs of action to either party." 29 U.S.C.
S 1132(g)(1).

Pursuant to that statute, the defendant in an ERISA
action usually bears the burden of attorney's fees for the
prevailing plaintiff or plaintiff class, thus "encourag[ing]
private enforcement of the statutory substantive rights,
whether they be economic or noneconomic, through the
judicial process." Report of the Third Circuit Task Force,
Court Awarded Attorney Fees 15 (Oct. 8, 1985), reprinted at
108 F.R.D. 237, 250. Although the statutory fee belongs to
the litigating party, often, as in this case, plaintiffs will
assign their right to any statutory fee to their counsel at the
outset of the litigation, thus making payment of fees to
counsel contingent on successful litigation and attainment
of the statutory fee from the losing party.

Another well-recognized exception to the general principle
that an attorney must look to his or her own client for
payment of attorney's fees is the common fund doctrine.
Since the decisions in Trustees of the Internal Improvement
Fund v. Greenough, 105 U.S. 527, 26 L.Ed. 1157 (1882),
and Central Railroad & Banking Co. of Ga. v. Pettus, 113
U.S. 116 (1885), the Supreme Court has consistently
recognized "that a litigant or a lawyer who recovers a
common fund for the benefit of persons other than himself
or his client is entitled to a reasonable attorney's fee from
the fund as a whole." Boeing Co. v. Van Gemert, 444 U.S.
472, 478 (1980). The doctrine reflects the traditional
practice in equity, and "rests on the perception that
persons who obtain the benefit of a lawsuit without
contributing to its cost are unjustly enriched at the
successful litigant's expense." Id. Parties as well as counsel
can seek fees under the common fund doctrine, for the
doctrine rests on a theory of unjust enrichment on the part
of beneficiaries of a successful lawsuit at the expense of the
litigants. See id.

The distinction between the fee in these two types of
cases, statutory fee and common fund fee, has practical
relevance. First, it determines who pays the awarded fee.
Under the common fund doctrine the plaintiff class as a
whole rather than the defendant bears the burden of
attorney's fees. Second, it affects how the fee is calculated,
as the "lodestar" method applied to set a reasonable
attorney's fee under a statutory fee provision, see Hensley
v. Eckerhart, 461 U.S. 424, 433-34 (1983), is not
necessarily applied under the common fund doctrine.

The method for establishing the statutory fee is now
settled by Supreme Court cases. The court must start by

taking the amount of time reasonably expended by counsel for the prevailing party on the litigation, and compensate that time at a reasonable hourly rate to arrive at the lodestar. See Pennsylvania v. Delaware Valley Citizens' Council for Clean Air, 478 U.S. 546, 564 (1986) (Delaware Valley I). Originally, it was contemplated that the lodestar could be adjusted upward or downward depending on a variety of factors, see Lindy Bros. Builders, Inc. of Phila. v. American Radiator & Standard Sanitary Corp., 487 F.2d

161, 167-69 (3d Cir. 1973), but more recently the Supreme Court has sharply limited the number of factors which can be considered in adjusting the lodestar amount.

Of particular relevance to this appeal, the Supreme Court has held that courts may not increase the lodestar amount in consideration of the attorney's contingent risk when calculating a fee awarded pursuant to statute. See City of Burlington v. Dague, 505 U.S. 557, 567 (1992). According to the Court, the lodestar amount "is `presumed to be the reasonable fee' to which counsel is entitled." Delaware Valley I, 478 U.S. at 564 (quoting Blum v. Stenson, 465 U.S. 886, 897 (1984)) (emphasis in original). "Although upward adjustments of the lodestar figure are still permissible, such modifications are proper only in certain rare and exceptional cases, supported by both specific evidence on the record and detailed findings by the lower courts." Id. at 565 (internal quotations and citations omitted).

Attorney's fees under the common fund doctrine may be calculated using the lodestar method but more frequently such fees have been awarded using the percentage-of-recovery method, which awards a fee based on a percentage of plaintiffs' recovery. See generally In re Prudential Ins. Co. Am. Sales Practices Litig., 148 F.3d 283, 333 (3d Cir. 1998), cert. denied, 119 S.Ct. 890 (1999). The Supreme Court has not yet decided whether its decision in Dague precluding the use of a multiplier in consideration of risk taken when calculating fees under the lodestar method applies in common fund cases, but some courts of appeals have held it does not. See, e.g., In re Washington Pub. Power Supply System Sec. Litig., 19 F.3d 1291, 1299 (9th Cir. 1994); Florin v. NationsBank of Ga., N.A., 34 F.3d 560, 564-65 (7th Cir. 1994). But see In re General Motors Corp. Pick-up Truck Fuel Tank Prods. Liab. Litig., 55 F.3d 768, 822 (3d Cir. 1995) (stating in dictum that court using lodestar method in common fund case could not apply a multiplier for risk after Dague). We took cognizance of the issue in In re Prudential, assumed "that multipliers for risk or counsel's expertise are appropriate in the lodestar cross-check in

common fund cases," but cautioned that "they require particular scrutiny and justification." In re Prudential, 148 F.3d at 341 n.121.

This case presents a hybrid situation. Because ERISA provides for a statutory fee, the district court has the discretion to require the defendant to pay a reasonable attorney's fee calculated under the lodestar method. See 29 U.S.C. S 1132(g)(1). However, because a common fund was created from which all plaintiff members of the class will benefit, the court may be able to use the common fund doctrine in awarding attorney's fees from that fund, which would be deducted from the amount owing to all the beneficiaries. As we explain in greater detail below, the fact that a common fund has been created does not mean that the common fund doctrine must be applied in awarding attorney's fees, a suggestion that is implicit in counsel's argument.

III.

It is important to note at the outset that counsel do not contend that the $460,000 fee paid to them by Spang under the ERISA fee-shifting provision was calculated contrary to established Supreme Court precedent, and, in fact, they stipulated to that amount. They do not argue that it provides inadequate recompense for the work performed on an hourly basis. We do not understand them to take issue with the Union's contention that the statutory fee covered every compensable hour spent by counsel, who were paid at the rate of $300 per hour for McIntyre and $275 per hour for Payne. Rather, they assert that the District Court should have awarded a fee from the common fund using the percentage-of-recovery method to account for the contingent nature of the undertaking and the result achieved, and then subtracted from that figure the statutory fee award paid by Spang. They argue that in this way they would have been satisfactorily paid and yet avoided the duplicative recovery that concerned the District Court.

Counsel thus stand on the position that since the result of the litigation was to create a common pension fund for the benefit of all plaintiff class members, they are entitled to additional fees based on the common fund doctrine of awarding attorney's fees. This presupposes that the Dague bar is inapplicable and that counsel in common fund cases

are entitled to a multiplier for risk of contingency, an issue we need not decide today.

A.

When the appellate courts have referred to the review of an award of attorney's fees under the abuse of discretion standard, the focus has been on the amount of the attorney's fee. See Hensley, 461 U.S. at 437 ("district court has discretion in determining the amount of a fee award"). However, it is also within the district court's discretion whether to award attorney's fees under an equitable doctrine such as the common fund doctrine. See Sprague v. Taconic Nat'l Bank, 307 U.S. 161, 166-67 (1939) (recognizing the federal court's power in equity to award costs and fees in its discretion from a common fund); see also Dardovitch v. Haltzman, 190 F.3d 125, 146 (3d Cir. 1999) (noting that "the District Court's discretion in deciding whether to grant attorney's fees in an equity case is exceedingly broad").

Counsel argue that we should review the District Court's decision in this case de novo because the decision rested on a determination of law. We agree that whether the District Court applied the proper standard in making its discretionary determination is a question of law subject to plenary review. See Student Pub. Interest Research Group of N.J. v. AT & T Bell Lab., 842 F.2d 1436, 1442 (3d Cir. 1988). Once we determine there was no legal error, we review for abuse of discretion.

Counsel argue that the District Court proceeded on the legal misunderstanding that ERISA precludes a common fund fee award because it contains a statutory fee provision. We do not read the District Court decision to so hold. Nor does the Union argue here that the ERISA fee provision preempts use of the common fund doctrine in all cases.

It is true that in its first opinion the District Court included some statements that could be interpreted as a categorical rejection of a common fund award to counsel who recovered fees under a statutory fee-shifting provision. See, e.g., July 14 slip op. at 6 ("The Court also concludes

9

that in seeking an award of counsel fees in an ERISA action litigated to judgment and subject to a fee-shifting provision, counsel may not recover fees under both the statute and against the common fund."). However, in the next sentence the court explained that its disapproval was directed to duplicative fees. See id. ("To permit counsel to recover fees

under both a fee-shifting provision and against the common fund is to award counsel duplicative recovery, a goal not contemplated by either the fee-shifting provision or the common fund theory."). The court did explain that the underlying rationales of the two approaches were inconsistent. But, as previously noted, the court limited its holding to "the facts and circumstances of this case." Id. at 2.

Even more significant, counsel had the opportunity to argue their position and entitlement to the common fund award to the court when the District Court agreed to reconsider its ruling. In particular, they directed the District Court to three unreported cases in which district courts awarded both statutory and common fund fees. The District Court noted that in those cases, where the common fund was derived from a settlement, the "courts were engaged foremost with awarding reasonable fees rather than with establishing a rule of law concerning the recovery of both statutory and common fund fees." August 15 slip op. at 3-4. The District Court here rejected counsel's suggestion that it was obliged to award common fund fees in a fee-shifting action whenever a fund is created that benefits non-plaintiffs, but made explicit that it was not establishing a categorical rule. It stated: "Without addressing the question of whether a fee-shifting statute does or does not preempt the application of the common fund doctrine, the Court finds that Counsels' argument [that they were entitled to recover both statutory and common fund fees] is logically flawed." Id. at 4 (emphasis added). The court continued: "[m]erely because a statute does not preempt the application of a doctrine, it does not follow that a court is required to apply the doctrine." Id. (emphasis in original). The court reiterated its understanding "that a district court's duty in awarding attorneys fees is to determine the reasonable amount of attorney fees to be awarded in each case," id. at 3 (emphasis in original), and

10

explained "it is precisely because the common fund doctrine is an equitable doctrine that its application rests within the discretion of the district court," id. at 4.

This discussion in the District Court's opinion on reconsideration should lay to rest any suggestion in the court's initial opinion that it believed it was unable to award the requested fee should it have wanted to. Indeed, at the end of that opinion, the court explained that it denied counsel a common fund fee because it believed counsel had already been reasonably compensated, "[c]onsidering the fact that the result in this case is principally driven by ERISA, the Court, in the exercise of its

equitable powers, finds that under the totality of the circumstances, an award of reasonable attorneys' fees based on an unenhanced lodestar formula plus expenses is the only reasonable method of compensating . . . counsel for their services." Id. at 5-6. Thus, as was the case for the Court in its review of the fee in Pettus more than one hundred years ago, the touchstone for the District Court's determination of the amount of the fee award was its reasonableness. We therefore review the District Court's determination of reasonableness as well as its decision that no additional fees were warranted from the common fund for abuse of discretion.

B.

In considering whether the District Court abused its discretion, we consider primarily whether the circumstances of this case present an inequity that needs redress, which is the typical situation for application of the common fund doctrine. As the Supreme Court has explained, the common fund doctrine "rests on the perception that persons who obtain the benefit of a lawsuit without contributing to its cost are unjustly enriched at the successful litigant's expense." Boeing, 444 U.S. at 478. For example, in Trustees of the Internal Improvement Fund v. Greenough, 105 U.S. 527 (1882), the first Supreme Court case to recognize the common fund doctrine, the Court held an individual plaintiff was entitled to an attorney's fee from the common fund as he had paid counsel over the course of the litigation. The Court found that it would be unjust if

11

that plaintiff were required to bear the entire cost of the litigation with no contribution from the other beneficiaries of the fund. See id. at 532.

Unjust enrichment was also the basis for upholding an award of attorney's fees in Boeing to be paid from an unclaimed common fund to compensate the individual class action claimants for their legal expenses. See 444 U.S. at 480. The litigating plaintiffs had brought a class action against Boeing for its failure to provide adequate notice of the class members' rights to convert the company's debentures into stock. As damages, plaintiffs were each awarded the difference between the redemption price of the outstanding debentures and the price at which the shares of Boeing's stock traded on the last day for exercising conversion rights. A common fund was created for the unclaimed portion of the judgment from which non-litigating class members could assert claims, with the remainder to return to Boeing. The award of attorney's fees from the unclaimed portion of the judgment was upheld on

the ground that absentee class members had received a benefit within the meaning of the common fund doctrine. As the Supreme Court explained, "Unless absentees contribute to the payment of attorney's fees incurred on their behalves, they will pay nothing for the creation of the fund and their representatives may bear additional costs." Id. at 480. Thus, the Court continued, an award from the common fund "rectifies this inequity by requiring every member of the class to share attorneys' fees to the same extent that he can share the recovery." Id.

In this case, there is no inequity to redress, as Spang ultimately bore the entire cost of the litigation. Counsel argue that their clients, the original plaintiffs, assigned to counsel any statutory fee they received, but in fact those plaintiffs paid nothing toward counsel's fee, as that was received from Spang. The class members may have been enriched, but their enrichment was not at the expense of either the litigating parties or their counsel.

Nor in this case can counsel argue they did not receive a reasonable fee. This is unlike the situation in Central Railroad & Banking Co. of Georgia v. Pettus, 113 U.S. 116 (1885), where, in approving an attorney's fee award from

12

the common fund created by counsel on behalf of all unsecured creditors of the debtor, the Court noted both that the non-litigating creditors would have benefitted without contributing toward compensation for counsel for services performed, see id. at 126-27, and that the amount of fees counsel had received from their clients was not a "reasonable" fee in that case. See id. at 127. Here, the District Court found that the fee was reasonable, and we have no reason to disagree.2

Of the many additional arguments counsel raise, the one that we believe requires some discussion is their contention that the District Court penalized them for proceeding to judgment, which resulted in the award of a statutory fee, whereas they would have been entitled to a fee under the common fund doctrine had they accepted a settlement. Counsel argue that, as a result, lawyers' self-interest might lead them to accept an otherwise inadequate settlement rather than rely on the vagaries of a court-awarded counsel fee. This, of course, is not a case that was concluded by settlement. This case was tried to judgment, and a fee awarded on that basis. We are not inclined to base our ruling on some hypothetical situation that might be presented in the future.

It is true that some courts have awarded a percentage fee

under the common fund doctrine from class action settlements in which a statutory provision would have applied had the case gone to judgment. See, e.g., Florin, 34 F.3d at 563; Skelton v. General Motors Corp., 860 F.2d 250, 255 (7th Cir. 1988). This court also has approved an award of fees from the common fund when the case has settled. See In re Fine Paper Antitrust Litig., 751 F.2d 562, 583 (3d Cir. 1984) ("settlements releasing defendants from both damage and statutory fee liability . . . result in a fund in court from which fees [can] be awarded under the equitable fund doctrine"). When there has been a settlement, the

_____

2. Counsel argue that the District Court's decision failed to reflect that they had evoked the LMRA in the complaint. The District Court acknowledged that an LMRA claim was included, but treated this case as principally driven by ERISA. There was no additional recovery on the basis of the LMRA.

basis for the statutory fee has been discharged, and it is only the fund that remains. It is possible to negotiate a fee from the defendant in the context of a settlement although this must be carefully monitored to avoid conflicts of interest. See In re Prudential, 148 F.3d at 334-35. In any event, consideration of the attorney's fees was likely factored into the amount of settlement.

Of course, there remains the possibility that in some cases counsel for a class of plaintiffs may receive a higher fee award upon settlement than they would have received had the case proceeded to judgment. We have directed the district courts to subject all fee applications in class action settlements to "thorough judicial review." See In re General Motors, 55 F.3d at 819. The disparity between fees resulting from application of the different methods of calculation will be minimized if the district courts cross-check the fee from the percentage of recovery method against that from the lodestar method to assure that the percentage awarded does not create an unreasonable hourly fee. Id. at 822; In re Prudential, 148 F.3d at 341, n.121. The Union has suggested that the percentage fee counsel asks from the common fund would give them a fee of $1,000 per hour. We have no occasion to check that figure. The ultimate goal in these cases is the award of a "reasonable" fee to compensate counsel for their efforts, irrespective of the method of calculation.

Further, the distinction between the statutory fee and the fee from a common fund is more than the amount of the fee; it is the party who pays the fee. The District Court stressed this fact and made explicit its concern that an

award of fees from the common fund would deprive the beneficiaries of a portion of the award, whereas it was defendant Spang who was responsible for the statutory fee. Counsel suggest that nothing in ERISA insulates fund participants from litigation costs, and note that there have been ERISA cases which applied the common fund doctrine. Counsel concede, however, that by far the largest number of ERISA cases to apply the common fund analysis are those that were settled, which, as we have noted, present a different circumstance.

14

This is not to say that the common fund doctrine may never be applied in a case for which there is a statutory fee provision and which goes to judgment. One such instance could be when the defendant responsible for the statutory fee has become bankrupt or otherwise has insufficient funds. Another is when there has been a showing that competent counsel could not have been obtained for that case or that line of cases. No such showing has been attempted here. We see no reason to list all the other possible situations. For the purposes of this case, it is enough to hold that the District Court here did not abuse its discretion in declining to award additional fees to be taken from the ERISA recovery under the common fund doctrine.3

IV.

For the reasons set forth above, we will affirm the District Court's order awarding statutory attorney's fees pursuant to 29 U.S.C. S 1132(g)(1) and denying additional fees out of the common fund.

_____

3. In arguing that the District Court gave only one reason for its decision

not to award common fund fees in this case, the dissent overlooks the District Court's statements that counsel had already been compensated by the defendant Spang when the case went to judgment and that counsel had received a reasonable fee from that source. The dissent does not dispute either reason. Instead, the entire dissent is directed to countering the suggestion that the District Court would "never award [ ] common fund fees in an ERISA case that goes to judgment," a statement the District Court did not make and that we, in any event, have expressly rejected.

15

STAPLETON, Circuit Judge, dissenting:

I would reverse the judgment of the District Court and remand the case for further proceedings. While the District Court's August 15th opinion can be read as an exercise of discretion, it does not adequately explain its decision to deny common fund fees in this case. The only reason the District Court offered for its decision to deny such fees was that "the Court remains concerned with awarding reasonable fees in light of the fee-shifting statute." August 15 slip op. at 4-5. In my view, that single sentence, which is essentially a reason for never awarding common fund fees in an ERISA case that goes to judgment, does not sufficiently explain why in this case such fees are inappropriate. Without such an explanation, we are effectively unable to review the District Court's decision.

Although today's decision leaves open the possibility that common fund fee awards could be made in future ERISA cases that proceed to judgment, such fees will only be available in cases where either the defendant is unable to pay the statutory fee or plaintiffs' counsel can successfully show "that competent counsel could not have been obtained for that case or that line of cases." Slip op. at 15. On the other hand, my colleagues freely concede, as they must, that common fund fee awards are routinely given in settled cases in which a statutory-fee provision would have applied had the case gone to judgment. They further concede that "there remains a possibility that in some cases counsel for a class of plaintiffs may receive a higher fee award upon settlement than they would have received had the case proceeded to judgment." Slip op. at 14. I find that unacceptable. While my colleagues are content to have one set of principles apply to settlements and another to judgments, I would follow the course this Court charted in In re General Motors Corp. Pick-Up Truck Fuel Tank Products Liability Litigation, 55 F.3d 768 (3d Cir. 1995) (hereinafter "General Motors"), and apply the same legal principles to both those cases that go to judgment and those that settle.

In General Motors, we reviewed a counsel-fee award in the context of a settled case. The relevant analysis, however, is equally applicable to fee awards following a judgment. We recognized that each of the two principal

16

methods of awarding fees -- percentage of recovery ("POR") and lodestar -- "has distinct advantages for certain kinds of actions, which will make one of the methods more appropriate as a primary basis for determining the fee." 55 F.3d at 820. It is, therefore, important for "a court making or approving a fee award [to] determine what sort of action the court is adjudicating and then primarily rely on the

corresponding method of awarding fees . . . ." Id. at 821. The Court in General Motors recognized that there are essentially two types of cases -- "statutory fee cases" and "common fund cases." The lodestar method is generally more appropriate for the former, while the POR method is more appropriate for the latter. In "hybrid" cases which share the attributes of both a statutory fee case and a common fund case, it is within the district court's discretion to make a particularized determination as to whether the case "more closely resembles" a common fund case or a statutory fee case. General Motors, 55 F.3d at 822; see also McLendon v. The Continental Group Inc., 872 F. Supp. 142, 151 (D.N.J. 1994) (recognizing the discretionary nature of the decision). I believe that the District Court should be required to make such a determination in this case.

I am concerned about the practical implications of the Court's opinion. Now that risk multipliers can no longer be used in calculating fees by the lodestar method, use of the POR method often results in significantly higher fee awards. See, e.g., In re Computron Software, Inc., 6 F. Supp.2d 313, 323 (D.N.J. 1998) (holding that fee award of approximately 2.5 times the lodestar amount was fair); Local 56, United Food and Commercial Workers Union v. Campbell Soup Co., 954 F. Supp. 1000, 1005 n.7 (D.N.J. 1997) ("[a]lthough the court recognizes that $3,239,373 is more than two times the lodestar, the court nevertheless finds such an award fair and reasonable under the circumstances"); J/H Real Estate Inc. v. Abramson, 951 F. Supp. 63, 65 (E.D. Pa. 1996) (finding that fee award more than 2.5 times the lodestar is "generous but fair premium"); In re Residential Doors Antitrust Litigation, No. 94-3744, Civ. A. 96-2125, MDL 1039, 1998 WL 151804, at *11 (E.D. Pa. Apr. 2, 1998) (finding that a fee 1.7 times the lodestar amount was a reasonable fee). Under today's ruling, there will be a

17

significant number of cases in which plaintiffs' counsel will be in a position to secure a POR award if there is a settlement, but will be limited to a substantially smaller, lodestar award if the case goes to trial. This creates a compelling incentive for the plaintiffs' counsel to settle, thus adding to the already significant conflict of interest between plaintiff class members and their counsel. See generally John C. Coffee, Jr., Understanding the Plaintiff's Attorney: The Implications of Economic Theory for Private Enforcement of Law through Class and Derivative Actions, 86 Colum. L. Rev. 669 (1986). For this reason, the method of awarding attorneys' fees should not turn on the manner in which the case is resolved.

If the District Court had determined that this case more closely resembled a common fund case1 and had granted the fee award here sought, its decision would not, in my judgment, conflict in any way with ERISA's fee-shifting provision. The defendant would wind up paying no more and no less than it would pay if the award had been made under the fee-shifting statute, 29 U.S.C. S 1132(g)(1). And the plaintiffs' counsel would not receive any duplicative recovery; the amount received from the defendant would be deducted from the common fund award.

This leaves the union's argument that S 1132(g)(1) reflects a general Congressional intent that a lodestar-calculated fee from the opposing party would be the exclusive method for court-ordered compensation of counsel in ERISA cases. I fail to perceive any evidence of such an intention, much less sufficient evidence to overcome the prescription against construing legislation to abrogate the courts' traditional, inherent authority.

The Supreme Court has expressly held that it is within the "inherent power in the courts to allow attorneys' fees in particular situations, unless forbidden by Congress . . . ."

_____

1. This is not a case in which a class of plan participants seek to recover

the benefits to which they are individually entitled. Rather, it is a suit seeking to compel the restoration of trust funds wrongfully diverted. The recovery is to be paid to the trust for the benefit of all participants. This suit, therefore, has much in common with the breach of fiduciary duty cases in which the common fund doctrine has traditionally been applied.

18

Alyeska Pipeline Services Co. v. Wilderness Society , 421 U.S. 240, 259 (1975) (emphasis added). It has similarly held that there is a strong presumption against the abrogation of courts' traditional equity powers. See Chambers v. Nasco, Inc., 501 U.S. 32, 47 (1991) (while the inherent powers of the lower federal courts may be limited by statute, as they were created by an act of Congress, "we do not lightly assume that Congress has intended to depart from established principles such as the scope of a court's inherent power") (internal quotation omitted); see also County of Suffolk v. Long Island Lighting Co., 907 F.2d 1295, 1327 (2d Cir. 1990) ("fee-shifting statutes are generally not intended to circumscribe the operation of the equitable fund doctrine").

Nothing in ERISA forbids courts from awarding common

fund fees in appropriate cases. Quite the contrary, to the extent any general Congressional intent with respect to fee awards can be gleaned from ERISA, it is to preserve the courts' traditional equity powers. The statute specifically authorizes courts to grant "appropriate equitable relief," Id. S 1132(a)(3), and its savings clause provides that it shall not "be construed to alter, amend, modify, invalidate or supersede any law of the United States." 29 U.S.C. S 1144(d).

In conclusion, if the District Court had made a particularized determination that this case more closely resembled a common fund case than a statutory fee case, it would have had the power to award common fund fees, notwithstanding ERISA's fee-shifting provision. Because the District Court made no such determination, however, I believe the case must be remanded for further proceedings. I respectfully dissent.

A True Copy:
Teste:

        Clerk of the United States Court of Appeals
        for the Third Circuit

19