Ronald DRAZIN; individually and on behalf of all other similarly situated; Ronald Sedlak; individually and on behalf of all other similarly situated; Bruce H. Nagel

v.

HORIZON BLUE CROSS BLUE SHIELD OF NEW JERSEY, INC.; Megellan Health Services Inc.; Green Spring Health Services, Inc., Megellan Behavioral Health New Jersey, LLC.

*Mazie Slater Katz and Freeman, LLC, Appellant.

*(Pursuant to Rule 12(a) Fed. R.App. P.).

No. 12–2642.

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit LAR 34.1(a) May 30, 2013.

Filed: June 11, 2013.

Randee Matloff, Esq., Bruce H. Nagel, Esq., Nagel Rice, Roseland, NJ, for Ronald Drazin and Ronald Sedlak.

Bruce H. Nagel, Esq., pro se.

David Jay, Esq., Laurie A. Poulos, Esq., Philip R. Sellinger, Esq., Greenberg Traurig, New York, NY, for Horizon Blue Cross Blue Shield of New Jersey, Inc.

Christopher Flynn, Esq., Tracy A. Roman, Esq., Kathleen T. Sooy, Esq., Crowell & Moring, Washington, DC, Thomas F. Quinn, Esq., Wilson, Elser, Moskowitz, Edelman & Dicker, Newark, NJ, for Megellan Health Services Inc.; Green Spring Health Services, Inc., Megellan Behavioral Health New Jersey, LLC.

Mazie Slater Katz and Freeman, LLC Roseland, NJ, pro se.

Eric D. Katz, Esq., David A. Mazie, Esq., Mazie, Slater, Katz & Freeman, Roseland, NJ, for Appellant.

Before: JORDAN, VANASKIE and COWEN, Circuit Judges.

## OPINION OF THE COURT

JORDAN, Circuit Judge.

Mazie Slater Katz & Freeman, LLC ("Mazie Slater") appeals from an opinion and order of the United States District Court for the District of New Jersey which denied its application for attorneys' fees and reimbursement of its expenses. For the following reasons, we will affirm.

## I. Background

This dispute arises out of the settlement and dismissal of several related class action lawsuits filed by rival law firms. In November 2006, attorney David Mazie filed a class action (the *"Beye* Action") against Horizon Blue Cross Blue Shield of New Jersey ("Horizon") seeking damages and injunctive relief under the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1002 *et seq.,* based on Horizon's alleged failure to provide health insurance coverage for the treatment of eating disorders. The following month, attorney Bruce Nagel of Nagel Rice, LLP ("Nagel Rice") filed this action (the *"Drazin* Action") against Horizon on similar grounds. Shortly thereafter, Nagel Rice filed a virtually identical class action against Aetna, Inc. (the *"DeVito* Action").

In September 2006, shortly before the filing of those actions, Mazie prepared to leave what was then the law firm of Nagel Rice & Mazie LLP. He filed the *Beye* Action during the "phase-out" period before starting his own firm, Mazie Slater, in January 2007. Before filing the *Drazin* and *DeVito* Actions, Nagel wrote to Mazie suggesting that they work together on a single case against Horizon, but Mazie declined. Due to personal animosity between Mazie and Nagel, the competing cases against Horizon proceeded separately in the District Court, although then-Magistrate Judge Shwartz[1] ordered that there be some cooperation between the two firms in an attempt to reduce duplicative discovery demands.

In October 2008, the District Court approved a settlement in the *DeVito* Action that included reimbursement of past denied claims for treatment of eating disorders and Aetna's agreement not to apply coverage limitations to future claims. Although Mazie Slater did not represent any of the *DeVito* plaintiffs, it opposed that settlement in a letter to the District Court, and one of the firm's attorneys appeared at the preliminary approval hearing and stated that his firm would not settle the *Beye* Action on the terms agreed upon in *De Vito.* The following month, Nagel Rice and the *Drazin* defendants informed the Court that they had reached a settlement of that action (the "Class Settlement") modeled on the settlement in the *DeVito* Action. The Class Settlement was the result of negotiations between Nagel Rice and counsel for the *Drazin* Defendants, and Mazie Slater was not involved in those negotiations. Magistrate Judge Shwartz granted Mazie Slater leave to apply for appointment as lead counsel if the firm and the *Beye* plaintiffs decided not to support the Class Settlement and to continue to litigate, but Mazie Slater did not do so.[2]

---

1. On April 10, 2013, Judge Shwartz was sworn in as a member of this Court.

2. That is not to say that Mazie Slater did nothing. The firm filed several motions to enforce purported side agreements between it and Nagel Rice concerning fees and publicity relating to the class actions, a "cross-motion" to add the *Beye* plaintiffs as class representatives in the *Drazin* Action, and a motion to strike a provision from the Class Settlement which it claimed was unconstitutional. Mag-

The District Court approved the Class Settlement after a final fairness hearing in April 2008. Of the 566 class members, two opted out and none objected. Mazie Slater did not object to final approval of the Class Settlement, although it did publicly criticize it as the result of a "reverse auction" in which Nagel Rice accepted a lesser settlement than it should have, the implication being that Nagel Rice had "sold out" the class members. *Drazin v. Horizon Blue Cross Blue Shield of N.J., Inc.*, 832 F.Supp.2d 432, 438 (D.N.J.2011). After the Class Settlement was approved, Mazie Slater filed a stipulation of dismissal in the *Beye* action because it no longer had a client who wished to litigate.

At that point, the dispute over attorneys' fees began. Nagel Rice sought an award of $2.45 million, the maximum amount permitted under the Class Settlement. Mazie Slater sought an allocation of 50 percent of any counsel fees awarded to Nagel Rice plus reimbursement of all of its litigation-related expenses. The District Court permitted further briefing on the fee issue and held an evidentiary hearing. The Court concluded that Nagel Rice, as coun-

sel who had achieved the successful result for the Class, was entitled to reasonable fees based on a lodestar calculation,[3] and it assigned a Special Master to calculate and recommend the appropriate fee. Based on the Special Master's report, the Court awarded $2,196,580 in fees and $112,506 in expenses to Nagel Rice. The Court determined that Mazie Slater was entitled to nothing because it made no contribution to, and had in fact opposed, the Class Settlement.

This timely appeal followed.

## II. Discussion[4]

"Our case law makes clear that ... the amount of a fee award is within the district court's discretion so long as it employs correct standards and procedures and makes findings of fact not clearly erroneous." *Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 329 (3d Cir.2011) (en banc). Mazie Slater argues that the District Court applied the wrong legal standard and that the factual findings to which it applied that standard were erroneous. Neither of those arguments has merit.[5]

istrate Judge Shwartz denied or otherwise terminated those motions. Mazie Slater then requested an indefinite adjournment of preliminary approval of the Class Settlement. That request was also denied.

3. A court determines the lodestar for a fee application by "multiplying the number of hours ... [the attorneys] reasonably worked on a client's case by a reasonable hourly billing rate for such services," taking into account various factors. *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 195 n. 1 (3d Cir.2000).

4. The District Court had jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d). We have jurisdiction under 28 U.S.C. § 1291. "This Court reviews the District Court's decision whether to award attorneys' fees for abuse of discretion, but exercises plenary review over the lower court's application of legal standards in mak-

ing that determination." *United States ex rel. Bogart v. King Pharms.*, 493 F.3d 323, 328 (3d Cir.2007). "Absent error of law, determination of the reasonableness of the fee is for the district court...." *Ursic v. Bethlehem Mines*, 719 F.2d 670, 675 (3d Cir.1983).

5. Mazie Slater also contends that it was entitled to a fee award under the "common fund doctrine" due to the time and effort it devoted to the *Beye* Action. The common fund doctrine "provides that a private plaintiff, or plaintiff's attorney, whose efforts create, discover, increase, or preserve a fund to which others have a claim, is entitled to recover from the fund the costs of his litigation, including attorneys' fees." *In re Gen. Motors Corp. Pick–Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 820 n. 39 (3d Cir.1995). In common fund cases, "the plaintiff class as a whole rather than the defendant bears the burden of attorney's fees." *Brytus v. Spang &*

"Under what has been denominated the American Rule' for payment of fees, the prevailing litigant is ordinarily not entitled to collect a reasonable attorneys' fee from the loser," and, "[i]nstead, attorneys are paid pursuant to contract with their clients." *Brytus v. Spang & Co.*, 203 F.3d 238, 241 (3d Cir.2000) (internal quotation marks omitted). However, there is a "widespread exception" to the American Rule, *id.* at 242, under the many statutes that shift the payment of one party's legal fees to the other. "The ERISA statutory fee provision is such a congressional enactment," *id.*, and it provides that "the court in its discretion may allow a reasonable attorney's fee and costs of action to either party," 29 U.S.C. § 1132(g)(1).

Although ERISA does not limit a fee award to the prevailing party, the Supreme Court noted in *Hardt v. Reliance Standard Life Insurance Co.* that "a fees claimant must show some degree of success on the merits before a court may award attorney's fees under § 1132(g)(1)." 560 U.S. 242, 130 S.Ct. 2149, 2158, 176 L.Ed.2d 998 (2010) (internal quotation marks omitted). "A claimant does not satisfy that requirement by achieving trivial success on the merits or a purely procedural victory...." *Id.* (internal quotation marks omitted). Because the *Drazin* Action was brought primarily under ERISA, the District Court correctly concluded that this is a fee-shifting case.[6] Consequently, the Court assessed whether Mazie Slater had achieved "some degree of success" on the merits on behalf of the *Drazin* Class

by litigating the duplicative *Beye* Action. It answered that question in the negative and denied the firm's request for attorneys' fees.

Mazie Slater argues that *Hardt* is inapplicable because it dealt solely with one individual claimant seeking fees under a fee-shifting statute and not with the allocation among law firms of a single amount awarded as a result of a fee shift in a class action. It is true that, "[i]n a class action settlement, the district court has an independent duty ... to the class and the public to ensure that attorneys' fees are reasonable and divided up fairly among plaintiffs' counsel." *In re High Sulfur Content Gasoline Prods. Liab. Litig.*, 517 F.3d 220, 227 (5th Cir.2008). And a proper allocation should reflect the relative contribution that the various plaintiffs' firms made to the successful outcome of the litigation. *See In re Thirteen Appeals Arising out of San Juan Dupont Plaza Hotel Fire Litig.*, 56 F.3d 295, 308 (1st Cir.1995) (approving a district court's allocation of fees paid out of a settlement fund based on an analysis "emphasizing the attorneys' relative contribution to the creation of the Fund" (internal quotation marks omitted)); *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–18 (5th Cir.1974) (listing "[t]he time and labor required" and "the results obtained" as factors in determining a fee award).

The District Court's application of *Hardt* was entirely consistent with those principles. The Court observed that "Ma-

---

Co., 203 F.3d 238, 242 (3d Cir.2000). This is not a common fund case because, under the terms of the Class Settlement, the defendants, not the class, were required to pay an award of attorneys' fees up to an agreed-upon cap. Even if the common fund doctrine were applicable, Mazie Slater would not be entitled to a fee award, since the District Court found that the firm did not contribute in any manner to

the Class Settlement negotiated by Nagel Rice.

6. As a result of its determination that this is a fee-shifting case, the District Court also employed the lodestar method in calculating the actual fees awarded in connection with the Class Settlement. Mazie Slater does not contest the actual fee calculation.

zie Slater litigated its duplicative *Beye* action parallel to the *Drazin* action and did not succeed in its efforts for the Class[ ]...." *Drazin,* 832 F.Supp.2d at 442. The Court's conclusion that Mazie Slater did not achieve "some degree of success on the merits" as required by *Hardt* is the same as concluding that the firm made no "relative contribution" to the Class Settlement. *Thirteen Appeals,* 56 F.3d at 308. Thus, the Court did not abuse its discretion in relying on *Hardt's* measure of whether an award of fees is warranted in the first instance to determine whether an allocation of fees to a particular plaintiffs' firm is fair under the circumstances.

Mazie Slater also challenges the District Court's factual determination that "Mazie Slater did not win a dispositive motion, nor win its case, nor negotiate a settlement for its clients in the *Beye* action." *Drazin,* 832 F.Supp.2d at 443. "We must not disturb the factual findings of the District Court unless [they are] clearly erroneous." *Lanning v. SEPTA,* 181 F.3d 478, 481 (3d Cir.1999). That is particularly true in the context of awards of attorneys' fees, "in view of the district court's superior understanding of the litigation and the desirability of avoiding frequent appellate review of what essentially are factual matters." *Ursic v. Bethlehem Mines,* 719 F.2d 670, 675 (3d Cir.1983) (quoting *Hensley v. Eckerhart,* 461 U.S. 424, 437, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983)) (internal quotation marks omitted). Here, it is undisputed that Mazie Slater neither won its case nor negotiated a settlement for its clients. It had no involvement in the settlement discussions with Horizon and filed a stipulation of dismissal in the *Beye* action after

those discussions were successfully concluded by Nagel Rice. And the only motion that Mazie Slater "won" on behalf of the *Beye* plaintiffs was its partial defeat of Horizon's motion to dismiss, which came six months after the District Court had already denied Horizon's motion to dismiss the *DeVito* Action on essentially the same grounds. We therefore cannot say that the District Court's finding that Mazie Slater achieved no success for its clients was erroneous, let alone clearly so.[7]

### III. Conclusion

Accordingly, we will affirm the District Court's order concerning attorneys' fees.

---

7. Mazie Slater also argues that Judge Hochberg should be disqualified from presiding over any further proceedings in this matter or in future matters in which Mazie Slater represents one of the parties. The argument for recusal is utterly frivolous and warrants no further comment.